UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 23-109-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TANNER M. ABBOTT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDEDR** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The United States has filed a motion *in limine* concerning the admissibility of certain evidence Defendant Tanner Abbott may seek to introduce during trial.  [Record No. 50] The evidence at issue as outlined in the government's motion concerns: (i) victim J.C.'s misdemeanor convictions for resisting arrest and assault; (ii) victim W.W.'s 2010 conviction for tampering with physical evidence; and (iii) the entry of a domestic violence restraining order against victim B.T.  Abbott also may attempt to introduce "any felony conviction that a witness does not acknowledge."

Next, Defendant Abbott has filed a motion *in limine*, seeking to exclude certain "other acts" evidence the United States may attempt to introduce under Rule 404(b) of the Federal Rules of Evidence.  [Record No. 57] More specifically, Abbott seeks to exclude potential evidence and/or testimony concerning several text messages obtained from his phone as well as other instances of assaultive conduct not charged in the case.  [Record No. 57]

For the reasons outlined below, the United States' motion will be granted, in part, and denied, in part.  Defendant Tanner's motion will be denied.

## I. The United States' Motion *In Limine* to Exclude "Character Evidence" Impeachment: Rule 609 of the Federal Rules of Evidence

The United States reports that none of the identified convictions in issue are felonies. However, Abbott asserts in response that W.W.'s conviction for tampering with physical evidence *is* a felony. Felonies are generally admissible for impeachment purposes under Rule 609(a)(1), subject to Rule 403 of the Federal Rules of Evidence.

The government concedes that W.W.'s conviction for tampering with physical evidence is a crime of dishonesty as defined by Rule 609(a)(2).[1] However, it reports that the conviction is more than 10 years old (which Abbott does not dispute); therefore, its admissibility is limited by Rule 609(b). This rule creates "a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded." *United States v. Rodriguez*, 409 F. App'x 866, 869 (6th Cir. 2011) (quoting *United States v. Sims*, 588 F.2d 1145, 1150 (6th Cir. 1978)).

The Sixth Circuit has observed that "evidence of convictions more than ten years old should be admitted very rarely and only in exceptional [ ] circumstances." *Id.* (quoting *United States v. Sloman*, 909 F.2d 176, 181 (6th Cir. 1990)). Abbott does not argue that exceptional circumstances exist here. Instead, he simply contends that the prior conviction is relevant to Abbott's decision to use force. Having considered the parties' arguments, the undersigned concludes that the tampering with physical evidence conviction will not be admitted for impeachment purposes. The United States' motion *in limine* to exclude evidence or testimony

---

[1] In Kentucky, a person tampers with physical evidence when "believing that an official proceeding is pending or may be instituted, he: (a) destroys, mutilates, conceals, removes or alters physical evidence . . . . or (b) fabricates any physical evidence with the intent that it be introduced in the official proceeding . . ." Ky. Rev. Stat. § 524.100.

regarding this conviction will be **GRANTED** if such testimony is solicited or such evidence is offered during cross-examination of W.W.

Next, Abbott argues that he should be able to introduce evidence of J.C.'s misdemeanor conviction for assault and resisting arrest because it is based on J.C. spitting on Abbott after he was handcuffed.  But Rule 609 has no exception for admitting a misdemeanor conviction for impeachment purposes for such a reason.  Thus, the United States motion *in limine* to exclude evidence or testimony regarding this conviction will be **GRANTED** if such testimony is solicited or such evidence is offered during cross-examination of J.C.

Abbott also contends that the domestic violence restraining order against B.T. is admissible because C.G., the petitioner named in the protective order, was present in the hotel room that was searched.  But this does not make the order admissible for impeachment purposes.  The United States motion *in limine* to exclude evidence or testimony regarding this domestic violence restraining order will be **GRANTED** if such testimony is solicited or such evidence is offered during cross-examination of B.T.

To the extent Abbott may seek to introduce evidence of unidentified felonies, Rule 609 provides that "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403 . . . in a criminal case in which the witness is not the defendant."  This Rule presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully.  *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005).  Unfortunately, the Court is unable to conduct a proper analysis of the use of felony convictions of potential witnesses in this case without further information.

**Character:  Rules 404(a), 405, and 608 of the Federal Rules of Evidence**

The government also reports that the defendant intends to seek to introduce prior convictions/bad acts of the victims as character evidence under Rule 404(a)(2).  That rule allows a defendant to offer evidence of a victim's pertinent *trait*, and if the evidence is admitted, the prosecutor may offer evidence to rebut it and offer evidence of the defendant's same trait.  Fed. R. Evid. 404(a)(2)(B).  But that means the victim's character can be established by testimony concerning his or her reputation or the witness's opinion of the victim—not specific acts.  Fed. R. Evid. 405(a).  *But see* Rule 405(b) (allowing inquiry into relevant instances of specific conduct on cross examination).  There is an exception that allows specific instances of conduct to be used as character evidence when a person's character or character trait "is an essential element of a charge, claim, or defense."  Abbott erroneously argues that the victims' history of assaultive behavior, resisting arrest, and tampering with evidence is admissible under Rule 405(b) because "it goes to an essential element of the 18 U.S.C. § 242 charges."  [Record No. 64, p. 2]

Rule 608 addresses the admissibility of evidence concerning a witness's character for truthfulness or untruthfulness.  A witness's credibility may be attacked by testimony about the witness's reputation for having a character for untruthfulness or by testimony in the form of an opinion about that character.  Fed. R. Evid. 608(a).  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of conduct to attack a witness's character for truthfulness.  Fed. R. Evid. 608(b).  However, on cross-examination, the court may allow inquiry into specific instances of conduct if they are probative of the character for truthfulness of the witness or another witness whose character the witness being cross-examined has testified about.  *Id.*

Rule 608(b) does not include the 10-year time limit like Rule 609(b), but this has been interpreted as an error in drafting and courts have excluded inquiry into instances of conduct outside the 10-year period.  The Notes of the Advisory Committee on the Proposed Rules bolster this position: "Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time."  *See also Anwar v. United States*, 648 F. Supp. 820, 829 n.12 (N.D.N.Y. 1986) (noting "the inconsistency which would result if the credibility of a witness could not be attacked by reference to convictions that are more than ten years old but could be impeached by inquiry into mere arrests that are just as stale").  Accordingly, defense counsel will not be permitted to question W.W. by asking him about the tampering with physical evidence incident.

**Other Acts: Rule 404(b) of the Federal Rules of Evidence**

The government appears to concede that some of the witnesses' prior conduct may be admissible as "other acts" under Rule 404(b)(2) to show Abbott's state of mind at the time of the alleged crimes.  The relevant test for determining whether an officer has used excessive force takes into consideration all facts and circumstances from the point of view of a reasonable officer, with the defendant's knowledge at the moment force was used.

One factor that may be considered is whether the person upon whom force was used posed a threat to the safety of the officer or other persons.  Several courts have observed in § 242 and § 1983 excessive force cases that an arrestee's criminal history may be admissible evidence *if the officer was aware of it at the time the force was applied*.  *See Serrano v. United States*, 766 F. App'x 561, 564, 567 (10th Cir. 2019); *United States v. Mitchell*, 454 F. App'x 39, 42 (3d Cir. 2011); *Bronzino v. Dunn*, 558 F. App'x 613 (6th Cir. 2014) (victim's criminal history was relevant to officer's state of mind in § 1983 excessive force case).

However, the Court must determine whether the risk of unfair prejudice substantially outweighs the probative value of the evidence. *See* Fed. R. Evid. 403. Obviously, the most relevant type of prior convictions would be those involving violence or flight. Abbott also claims now that W.W.'s prior conviction for tampering with physical evidence impacted his decision to use force. Likewise, he reports that the proponent of B.T.'s domestic violence order was in the hotel room with him at the time of the search. (However, he does not state that he knew that prior to the search and he listed "consent" on the incident report as the basis for the search.). As long as these items could reasonably have impacted Abbott's decision to use force, he may be permitted to testify regarding them. *But see United States v. Rossy*, 2023 WL 8039500 (S.D.N.Y. Nov. 20, 2023) (correctional officer who was accused of falsifying records concerning an attack on an inmate was not allowed to introduce evidence of the inmate's criminal and disciplinary history when it had little probative value).

The government seems to acknowledge that such evidence might be admissible, but only if Abbott testifies. [*See* Record No. 50, pp. 4-5 (stating defendant's position that "prior acts known to the defendant may be admitted if they tend to show a propensity for violence, resisting, fleeing, or the like").] This makes sense with respect to the victims' *criminal history* because, until Abbott testifies, there is no way to know whether he knew about these prior events at the time he used force on the victims. And if he did not, the victims' criminal history is not relevant.

The government also notes that Abbott does not have *carte blanche* to introduce every rumor or negative thing he ever knew about the victims. Evidence introduced under Rule 404(b) must be probative of a material issue other than character. *United States v. Bell*, 516 F.3d 432, 441-42 (6th Cir. 2008). Accordingly, the evidence should be related to the victims'

dangerousness or risk of flight.  And although the Sixth Circuit has not set a time limit for prior-act evidence, "common sense dictates that temporal remoteness reduces the probative value of prior conduct."  *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018).

In summary, Abbott's counsel will not be permitted to mention such evidence in opening statements, since the admissibility of such evidence will be contingent upon the defendant's decision to testify.  Likewise, Abbott will be required to notify the government of any specific acts of the victims he intends to introduce prior to referencing such acts before the jury.

### *Res Gestae*:

Abbott contends that certain evidence is admissible as *res gestae*.  This includes "J.C.'s fleeing and evading police and driving impaired during the events giving rise to Count 1," "W.W. trafficking marijuana to an informant, and then possessing a controlled substance (methamphetamine) and paraphernalia (a glass pipe) immediately before and during the incidents giving rise to Counts 2 and 3," "B.T.'s felony drug trafficking activity on March 11 which precipitated the police encounter with him underlying Counts 4-6," and "D.N. (reckless driving, wanton endangerment, driving while impaired, resisting arrest, disorderly conduct, and possession of marijuana) and C.B. (resisting arrest, disorderly conduct, possession of marijuana and public intoxication) during the events giving rise to Count 7."  As a practical matter, this evidence overlaps with Abbott's 404(b)(2) evidence to some extent.

Abbott has not indicated whether these are convictions, formal charges, or just informal accusations.  However, the Sixth Circuit has approved the introduction of prior convictions under principles of *res gestae*.  *United States v. Olds*, 309 F. App'x 967, 973 (6th Cir. 2009).  To come within this exception, the evidence must "consist of those other acts that are

inextricably intertwined with the charged offense[s] or those acts, the telling of which is necessary to complete the story of the charged offense." *Id.* (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)); *United States v. Dodson*, 2024 WL 712494, at *8-9 (6th Cir. Feb. 21, 2024) (admitting the defendant's prior misdemeanor convictions as 404(b) evidence and *res gestae*).  Proper background evidence has a causal, temporal, or spatial connection with the charged offense.  Typically, such evidence is a prelude to the charged offense, is a probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.  *Id.*  Such evidence may be admissible to the extent it is necessary to tell a complete story of the events surrounding the defendant's charges.

Unlike the victims' criminal history, defense counsel may question the victims about these incidents because such testimony is not being introduced for impeachment purposes.  Since the incidents happened contemporaneously with the uses of force, there is no question that Abbott knew about them.  Additionally, if Abbott has a witness who has direct knowledge of the incidents, that person also could testify about them.

## II.      Abbott's Motion *In Limine* to Exclude Other Acts Evidence

The United States provided the defendant with notice of its intent to offer nine items of evidence constituting "other acts" under Rule 404(b)(2) to prove the element of willfulness.  They are:

1.      April 20, 2020, text messages regarding a vehicle pursuit in which the defendant made statements, including, "we beat the f_ _ k out of him."  [Gov. Ex 18]

2.      Testimony from J.C. in which J.C. will describe an incident that allegedly occurred on June 24, 2020, in which Abbott used excessive force against J.C. and then sent

text messages telling people he had given J.C. as "ass whopping [sic]."  [Gov. Ex 2 (Text Message)]

3.      Testimony from J.W., a relative of W.W., who witnessed the conduct alleged in Count 2.  J.W. is expected to testify that Abbott had pulled him over a few weeks prior to the conduct alleged in Count 2 and told him he would "beat his ass."  However, when Abbott found nothing during the search of J.W.'s car, he let him go without further action.

4.      Testimony from B.T. that when Abbott drove him to jail he accelerated his patrol car to high speeds and braked suddenly, causing B.T. to lurch forward into the bars of the prisoner transport compartment.  B.T. will testify that Abbott did this after B.T. made insulting remarks toward him.

5.      January 1, 2021, text messages in which Abbott stated, "nothing like a pursuit and ass whopping to bring in the nee year! [sic]" and that a suspect had "resisted arrest" and "is now in the ER."  [Gov. Ex 17]

6.      April 15, 2021, text messages between Abbott and other officers in which Abbott said that he arrested a "kid" who he had arrested on another occasion.  The other officer asked the defendant whether Abbott "beat him up again."  Abbott said he did not and that he even let him smoke.  The officer responded, "God ur such a changed man," to which Abbott replied, "haha preparing for the cameras."  [Gov. Ex 20]

7.      April 15, 2021, text message—Abbott sent a photo to other officers of himself wearing a tactical vest, a BCSO badge, and a pair of sunglasses with a text message that stated: "Time to violate rights!" [Gov. Ex 7]

8.      June 10, 2021, text message—another law enforcement officer texted Abbott and advised Abbott with respect to a particular suspect, "if you find him, beat his ass for me please." Abbott replied, "Lol not a problem." [Gov. Ex 19]

9.      June 12, 2021, text message—Abbott and another officer exchanged text messages about an arrest that had occurred earlier that day. The other officer stated that the arrestee had been "shaking like a leaf." Abbott stated that he was scared he was going to "get an ass whopping [sic]" and that Abbott had "told people [he] was gonna beat his ass lol." [Gov. Ex 16]

Abbott contends these items constitute nothing more than propensity evidence and, therefore, should be excluded. But federal courts around the country routinely admit evidence of prior excessive force incidents to prove intent in cases under 18 U.S.C. § 242. *United States v. Mize*, 498 F. Supp. 3d 978, 984 (S.D. Ohio 2020) (collecting cases). As the court noted in *United States v. Krug*, it is difficult to prove intent without circumstantial evidence and it is even more difficult to prove a unique type of specific intent, such as that required by § 242, without circumstantial evidence. 2017 WL 907817, at *4 (W.D.N.Y. Mar. 8, 2017). *See Asher* 910 F.3d at 860 (noting that "[f]or prior act evidence to prove the defendant's intent, probative value depends mainly on two factors: similarity and temporal proximity")

The defendant correctly outlines the test for admissibility of evidence tendered pursuant to Rule 404(b)(2):

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020) (citing *United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012)).

In *Dunnican*, the trial court admitted text messages under Rule 404(b) regarding the defendant's intent to distribute controlled substances. The lead investigator in the case presented testimony showing that the cell phone belonged to the defendant and that the messages were obtained through a multi-step extraction process. *Id.* at 867-68. The court admitted the messages, concluding that there was sufficient evidence showing that the defendant sent the text messages, the government had shown the relevancy of the messages in establishing the defendant's intent to distribute, and the probative value of the messages outweighed their prejudicial value. *Id.* at 869.

Dunnican appealed the trial court's admission of the text messages, arguing that they were actually character or propensity evidence. *Id.* at 873. Reviewing the court's decision for abuse of discretion, the Sixth Circuit noted that Rule 404(b) is "a rule of inclusion rather than exclusion." *Id.* at 874 (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)). It further observed that the evidence was introduced to prove a necessary element of the charge—the defendant's intent to distribute the controlled substance. Additionally, the government followed the proper protocol in offering the evidence: it gave pretrial notice of its intent to introduce the text messages for the purpose of proving intent to distribute and presented evidence establishing the defendant's ownership of phone at issue.

The circuit court concluded that the trial court also had followed the proper protocol in admitting the evidence. It first determined that the government provided sufficient evidence to show that the defendant sent the messages and was introducing the messages for the proper purpose of proving the defendant's intent to distribute. Second, the court determined that the

probative value of the text messages outweighed any unfair prejudice to the defendant. And third, the court imposed safeguards by giving limiting jury instructions twice—after introduction of the evidence and during the final jury instructions. *Id.* at 874.

The defendant relies heavily on the Sixth Circuit's decision in *Asher*, 910 F.3d 854, to argue that the evidence should not be admitted under Rule 404(b). However, *Asher* is different from this case in important ways. *Asher* involved a jailer who was convicted of violating 18 U.S.C. §§ 242 and 1519 after he beat an inmate and falsified documents to try to cover up his actions. The government notified Asher that it intended to offer evidence under Rule 404(b) that he had assaulted a different prisoner and tried to cover up that assault in a similar manner about two and a half years earlier.

Asher objected to the introduction of this evidence, arguing that it was unduly prejudicial. Because the government sought to introduce the evidence to prove Asher's intent, he attempted to exclude the evidence by providing a conditional stipulation on the element of intent. Asher explained that his defense was not based on intent, but on his lack of involvement in the assault in the first instance. Thus, if the jury found that he indeed assaulted the prisoner, he was willing to concede that he possessed the necessary intent. The government refused to accept the stipulation and the trial court agreed that the evidence was admissible under Rule 404(b). The jury heard about both assaults and coverups and convicted Asher of the charges.

Asher appealed the court's decision to allow introduction of the subject evidence. He argued that the evidence should have been excluded under Rule 403 because it was unduly prejudicial. The Sixth Circuit noted that, when considering the probative value of such evidence, courts should consider the availability of other means of proof. *Id.* at 861. However, the existence of alternative means of proof—even one with substantially the same or greater

- 12 -

probative value but a lower danger of unfair prejudice—does not require exclusion of the more prejudicial evidence. *Id.* (citing *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997)).

On the other side of the scale is unfair prejudice, which is the "undue tendency to suggest a decision based on improper considerations," such as "the chance that the jury will convict the defendant because of his prior, instead of his charged, conduct." *Id.* This may arise when there is a likelihood that the jury will reach a verdict based on emotion rather than evidence. This is of particular concern when the prior act evidence is so conscience shocking that the jury may "decide that the defendant is a bad person and deserves to be convicted," even if his guilt were not proven in the instant case. *Id.* at 861-62. "But when the charged crime has 'inflammatory potential' similar to or greater than the prior act, the risk of the jury being inflamed by presentation of the prior act evidence may be diminished." *Id.* at 862.

The court also observed that the risk of luring the factfinder into impermissible propensity reasoning is heightened when "the prior act is much like the charged conduct." *Id.* So one of the same factors that make the evidence probative, make it prejudicial. *Id.* Finally, sometimes 404(b) evidence can be so prejudicial that a limiting instruction is insufficient.

Ultimately, the Sixth Circuit decided that the trial court abused its discretion in admitting the evidence. Importantly, Asher's intent was not at issue, as he agreed to concede that issue if the jury found that he had committed the assault. Further, the court noted that his conduct, in and of itself, was a sufficient basis for the jury to find his intent. Asher stood accused of "beating a helpless prisoner . . . [and] pretending to be a doctor, and falsifying reports to cover up this illegal conduct." *Id.* at 863. As the circuit court noted, it was "specious to think that the jury might have disbelieved Asher's denials, yet acquitted him for lack of

specific intent."  That scenario is vastly different from the situation presented here, where a jury could easily believe that a sheriff's deputy used force on arrestees for a legitimate reason.

Abbott does not dispute that he sent the text messages that the government seeks to introduce.  Instead he argues that there is insufficient evidence to prove Abbott's involvement in the events underlying the text messages or that he did anything improper.  However, as the government points out in its response to Abbott's motion *in limine*, the proper inquiry is whether he sent the text messages.  *See Dunnican*, 961 F.3d at 869.

The text messages themselves are the evidence being considered and the jury will be able to form their own conclusions regarding Abbott's state of mind based on the messages. Contrary to Abbott's suggestion, admission of the messages would not require the jury to evaluate the reasonableness of Abbott's actions on the prior occasions.  Instead, his comments would provide the jury with circumstantial evidence regarding his state of mind during the use of force on prior occasions.

To the extent Abbott argues that the April 20, 2020, text message exceeds the scope of the search warrant, he did not file a motion to suppress and has offered no explanation for such failure.  Accordingly, any such objection at this point is untimely.  *See* Fed. R. Crim. P. 12(c)(1).  (The government also indicates that the text message does not exceed the scope of the warrant.)

The messages are probative of the element of willfulness.  Abbott is discussing assaulting people and violating their rights.  And based on Sixth Circuit authority, the evidence would not be unduly prejudicial.  It is not so inflammatory that it would cause the jury to make a decision based on emotions or impermissible propensity reasoning.  The text messages do

not "shock the conscience" and can be ameliorated by limiting instructions if such is requested at the time the evidence is admitted. *See Asher* at 910 F.3d at 861.

The government also plans to present the testimony of three witnesses who will testify that Abbott either used improper force against them or threatened to do so on occasions other than those charged in the indictment. For the Court to find that there is sufficient evidence that these events actually occurred, it will likely need to hear testimony from these witnesses outside the presence of the jury. Assuming the Court does find there is sufficient evidence from which the jury could conclude the events occurred, the evidence may be admissible under Rule 404(b)(2) of the Federal Rules of Evidence.

All three incidents are probative of Abbott's intent. The uncharged incident involving J.C. occurred 10 months prior to the incident in Count 1, so temporal proximity is present. *See Asher*, 910 F.3d at 860. The event also is like the charged conduct—as the government claims that Abbott approached J.C.'s car door, opened it, threw him to the ground, and slammed his head into the pavement several times. This is the type of 404(b) evidence that is routinely admitted in § 242 cases to prove intent (willfulness). *See Mize*, 498 F. Supp. 3d at 984 (collecting cases). While the evidence undoubtedly is prejudicial, it is not so unduly prejudicial that it cannot be tempered by limiting instructions.

The alleged incident involving J.W. also occurred close in time to the charged conduct (i.e., a few weeks prior to W.W.'s arrest on February 2, 2021). While Abbott is not alleged to have actually used force on J.W., J.W. claims that Abbott told him he would "beat his ass." If true, this tends to shed some light on Abbott's mental state when dealing with arrestees. The evidence is somewhat prejudicial, but the jury can decide whether it believes J.W.'s testimony.

Plus, the prejudicial effects of the testimony can be reduced by limiting instructions (again, if such an instruction is requested at the time the evidence is offered).

Finally, the expected testimony from B.T. regarding his transport to jail would satisfy the temporal proximity requirement, as this presumably occurred soon after Abbott arrested B.T. on March 31, 2021. B.T. is expected to testify that when Abbott drove him to jail, Abbott accelerated his patrol car to high speeds and braked suddenly, causing B.T. to lurch forward into the bars of the prisoner transport compartment. B.T. is expected to testify that Abbott's actions followed B.T. made insulting remarks toward him.

While not identical to the charged conduct, this proposed evidence is probative of Abbott's intent to use force impermissibly as a way of dealing with annoying conduct by arrestees. Again, the evidence may be prejudicial but is not so prejudicial as to inflame the jury or encourage a decision based on emotion rather than the facts.

### III.    Conclusion

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.     The United States' motion *in limine* is **GRANTED**, in part, and **DENIED**, in part. The defendant's motion *in limine* is **DENIED**.

2.     Evidence of victim J.C.'s misdemeanor convictions for resisting arrest and assault; (ii) victim W.W.'s 2010 conviction for tampering with physical evidence; and (iii) the entry of a domestic violence restraining order against victim B.T. is excluded for impeachment purposes.

3.     A party must notify the opposing party prior to seeking to impeach a witness based on a prior felony conviction.

4.      The defendant may testify concerning the alleged victims' criminal history provided he first testifies that he knew about that history at the time of the events alleged in the indictment and it was reasonably relevant to his decision to use force.

5.      The defense may question the alleged victims concerning the events surrounding the charges in the indictment, including any criminal charges or convictions that resulted against the victims, as part of the *res gestae* of the case.

6.      If properly authenticated, the six text message conversations identified above as Government Exhibits 18, 17, 20, 7, 19, and 6 are admissible under Rule 404(b)(2) as evidence of the defendant's intent and willful actions.  If offered and admitted, the defendant may seek to have the Court provide the jury with a limiting instruction regarding the use of such evidence.

7.      The expected testimony by J.C., J.W., and B.T. describing instances of uncharged assaultive conduct by the defendant is presumptively admissible.  However, the Court will conduct a hearing outside the presence of the jury prior to introduction of such testimony to establish that there is a sufficient basis to conclude that the prior instances of conduct actually occurred.

Dated:  February 25, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky