1     Case No. 23-cr-109.

2     Case Name:  U.S. v. Abbott

3     Type of Hearing:  Trial Day 5

4

5         This realtime translation has not been edited, proofread,

6     or corrected.  It is a draft transcript and is not certified

7     to be true and correct.  It may contain computer-generated

8     mistranslations of stenotype code or electronic transmission

9     errors, resulting in inaccurate or nonsensical word

10    combinations or untranslated stenotype symbols which cannot be

11    deciphered by non-stenotypists.

12        The realtime translation may differ from a certified

13    transcript of the same proceedings in contact, page and line

14    numbers, punctuation, and formatting.

15        Guide to Judiciary Policy, Section 320.50.50.

16

17                                - - -

18

19        MR. WARD:  Broke his face with one punch.  He got an

20    ass whooping.  We beat the fuck out of him.

21        Those are not the words of an officer using the minimum

22    force necessary to protect the public and make arrests.

23        Punching a handcuffed man in the face, throwing a man who

24    can barely walk without a leg brace into a wall, elbowing a

25    skinny teenager in the face so hard his glasses break, those

1   are not the actions of an officer making split second

2   decisions in good faith.  Those are the words and the actions

3   of a bully with a badge.  Someone who enjoys hurting people

4   and is sure he's going to get away with it.

5       Tanner Abbott was given a badge and a gun and the legal

6   authority to use force when it was reasonable and necessary to

7   protect the public and enforce the law.  But instead, he used

8   the authority that that badge represented to hurt people who

9   couldn't fight back.  People who he thought nobody would

10  believe because they had criminal records, because they were

11  poor, because they were teenagers out too late on a school

12  night.

13      People who couldn't defend themselves because they were

14  pinned against cars, because they were disabled, or because

15  their hands were literally chained behind their backs.  And he

16  had every reason to think he would get way with it.  The

17  defendant isn't some mindless goon who indiscriminately beat

18  everyone he came across.  He was careful.  Careful to only

19  hurt people with no power in society and even then careful to

20  cover his tracks.

21      He wrote vague and misleading reports, he blamed his

22  victims, and when he needed to, he told lies.  He knew when a

23  police officer's word wouldn't be questioned.

24      Remember Mr. Patel saying he never asked to see the

25  search warrant because he took the police officer's word that

1   it existed?  And he was acutely aware of what was and wasn't

2   on camera.  He didn't just text his friends to brag that he'd

3   broken Destin Newman's face in three places with one punch.

4   He also texted Detective Lewis who he knew had been wearing a

5   body camera to make sure it hadn't seen anything it wasn't

6   supposed to.

7       After Mr. Welch's arrest you heard him discussing, at the

8   end of that video, whether Mr. Welch's mother had been filming

9   and if so, whether they could access the camera on her phone

10  without a password.  He took his own video of that arrest but

11  he never submitted it in evidence, he never told anyone it

12  existed because it didn't support the false story that he fed

13  to Deputy Hunter.

14      And do you remember that text message where another

15  officer was surprised that he hadn't beaten up a suspect?  Do

16  you remember how he explained that?  Haha, preparing for

17  cameras.

18      In a very real sense there were two Tanner Abbotts.  He

19  was one person in his paperwork, a diligent proactive cop who

20  just wanted to get drugs off the street, that was who you saw

21  on the stand during his direct testimony.  But in real life,

22  off camera, he was a very different person.  A bully with a

23  badge, who liked the way that using too much force made him

24  feel.

25      In this trial, you found out the truth that his lies were

4

1    meant to conceal.  You learned what he made sure wasn't on

2    video, you heard from the officers who he counted on to keep

3    his secrets, and that's why you know he's guilty of everything

4    he's charged with.

5         The defendant is charged with seven crimes stemming from

6    those different incidents you heard about.  Count 1 charges

7    the unreasonable force against Justin Cooper when he sucker

8    punched him in handcuffs.

9         Count 2 and 3 relate to the sucker punching of William

10   Welch.  Counts 4, 5, and 6 relate to that incident at the

11   hotel with Brent Thomas.  Count 4 is the illegal search.

12   Count 5 is the false report.  And Count 6 is for slamming

13   Mr. Thomas into the wall.

14        Finally, Count 7 charges the defendant with using

15   unreasonable force against those two young men you met on

16   Wednesday, Destin and Clay.  That's the incident in which he

17   bragged about having broken Destin's face with one punch.

18        As you heard those charges, you probably noticed for each

19   of the four incidents, there's one charge of using

20   unreasonable force.  Those charges are really the core of this

21   case, so I'll start by talking about that crime.  Let's put

22   the elements up on the screen here.

23        Counts 1, 2, 6, and 7 each have four elements.  The

24   defendant acted under color of law, he used unreasonable

25   force, he acted willfully, meaning he acted in bad faith, and

5

1      four, that the offense resulted in bodily injury.

2          We'll start with the first element, color of law.  As

3      Judge Reeves just told you, a person acts under color of law

4      when he's a government official, like a police officer, and

5      he's acting in his official capacity.

6          The defense has stipulated that, meaning they've agreed

7      when the defendant hit, punched, slammed, elbowed those

8      victims, he was doing so in his capacity as a deputy sheriff.

9      That's all the first element of this crime requires.

10         The second element is that the defendant deprived someone

11     of the constitutional right to be free from unreasonable force

12     by a law enforcement officer.  That's a right that every

13     person in this country has.

14         The defendant doesn't contest that he used force against

15     any of these people.  Justin Cooper, William Welch, Brent

16     Thomas, Clay Ballard, Destin Newman.  So the only question for

17     you on the second element is whether the force was reasonable

18     or unreasonable.

19         Now, none of you are police officers, so how are you

20     supposed to evaluate that?  You just heard the answer in

21     Judge Reeves' instructions.

22         The standard you have to apply is this:  An officer's use

23     of force is unreasonable under the law if it's more force than

24     a reasonable officer would use under the same circumstances.

25     Not with 2020 hindsight, but knowing what the defendant knew

6

1    at the time.

2    Here's another way of putting that.  Would a reasonable

3    officer have done what he did?  You know the answer is no.  A

4    reasonable officer would not have punched Justin Cooper,

5    although his hands cuffed behind his back, he was being

6    guarded by another officer and he wasn't resisting.

7    A reasonable officer would not have punched William Welch

8    in the face while he was pinned flat against a car with one

9    hand cuffed behind his back and the other by his side.

10   A reasonable officer would not have thrown Brent Thomas

11   into a wall, even though he's an older man who can't walk and

12   wasn't resisting.

13   That reasonable officer would not have punched Destin

14   Newman in the face so hard that he broke his nose and then

15   slammed him to the ground and kept hitting him.

16   A reasonable officer would not have elbowed Clay Ballard

17   in the face while his hands were up and he was screaming, Stop

18   hurting my brother.

19   There are close calls in law enforcement, nobody denies

20   that, but those are not close calls.

21   The third element you have to decide is willfulness.  The

22   question for you here is basically, did the defendant know

23   what he was doing was wrong and choose to do it anyway, or did

24   he make a mistake?  Did he act in good faith?

25   Here's the important thing for you to remember about

1    that.  People who think they're doing the right thing, don't

2    lie about it.  They don't tell other people to lie about it.

3    They don't fail to mention important facts in places where

4    they are required to document the whole truth.

5        A police officer who thinks he's following the law in

6    using reasonable force, doesn't try to make sure it's not on

7    video.  He doesn't brag about breaking bones and putting

8    people in the hospital.  He doesn't text his friends and

9    saying, Find that guy and beat him for me.

10       The last element is the offense resulted in bodily

11   injury, and Judge Reeves just told you, bodily injury doesn't

12   mean someone was maimed or that they broke bones or had to go

13   to the hospital, although Destin Newman certainly did.  It can

14   mean they got a bruise or a mark, or just even that they

15   experienced temporary, physical pain.

16       And certainly all of those folks who got punched, who got

17   slammed, who got hit, they experienced pain, notwithstanding

18   maybe a little bit of a tough guy attitude from Mr. Welch on

19   the stand.

20       So now we've talked about the law, let's turn to the

21   individual counts.  Let's start with Count 1.

22       Save for one somewhat important thing, there's really no

23   dispute about what happened here.  The defendant admitted he

24   did punch Mr. Cooper in the face after the chase was over and

25   while Mr. Cooper was in handcuffs.  So whether Sergeant Gibson

8

was biased because of some prior argument with the defendant, that didn't matter.  That was a distraction that was to get you folks to take your eye off the ball.

Because the defendant told you Sergeant Gibson saw exactly what he said he saw.  He saw the defendant punch Mr. Cooper in the face while he was in handcuffs.  Now, the defendant has claimed that he did that because Mr. Cooper spit on him, but you know that didn't happen.

The law enforcement officers you heard from who were asked all said, punching someone in handcuffs in the face is a really big deal.  Someone had been fired from the defendant's department, someone he knew, while he worked there for doing exactly that thing.  Punching someone in handcuffs in the face is the kind of thing, if you do it for a legitimate reason you'd better be ready to explain yourself.

But the defendant didn't explain himself to Sergeant Gibson, he didn't put it in his report in which he didn't mention using any force at all, what's on the screen is what he said about what happened when the chase ended.  He didn't charge Justin Cooper with assault on an officer for spitting on him, or even mention that it happened.  He didn't write it down anywhere.

In 2020, the last time he chased Justin Cooper, he took a picture of Justin Cooper bleeding from an injury out of his head and sent that around.  But you haven't seen a picture of

1   the spit on the defendant's uniform.  He claimed it hit him

2   right in the chest.  That would be assault on a police

3   officer.  The same charge he pressed against Mr. Newman, the

4   same charge he wanted Deputy Hopper to press against

5   Mr. Welch, but here, no charge, no mention, and that's even

6   though he charged Mr. Cooper with things like, running stop

7   signs and not using his turn signal, during a three county

8   high speed police chase.

9        But here, an assault on a police officer, that wasn't a

10  big enough deal to mention.

11       In fact, you've heard the defendant didn't mention that

12  spitting to anyone until not long before his trial.  That's

13  when he get on SnapChat, which deletes itself, and floated the

14  idea with his buddy, Deputy Bradshaw.  He's thinking, how

15  about if I say he spit on me?  Maybe that will justify it.

16  But the defendant who works for BCSO, went to the same

17  academy, had the same training, remember what he told you?

18  What he told the defendant?  It's never justified.

19       So when Deputy Bradshaw didn't go along with his false

20  excuse, all he had to do was close his SnapChat knowing that

21  his settings would erase all the evidence of him testing out

22  his false excuse.  And it's just that.  A false excuse.

23       He took the stand, he took an oath and he lied to all of

24  you about what happened during Mr. Cooper's arrest.  No

25  trained and experience police officer would punch a man in

1    handcuffs and fail to document it.  It just wouldn't happen.

2    And no one other than the defendant told you that it did.

3       What really happened?  Well, you heard the truth.

4    Mr. Cooper ran from the police.  And when the chase was over,

5    after he got caught, the defendant decided to dish out a

6    little old fashion street justice.  Standing right in front of

7    him was his ideal victim.  Someone who couldn't fight back

8    because he was handcuffed; someone with a criminal record,

9    who's accusations would be dismissed; someone he'd done it to

10   before and gotten away with it.

11      You know this use of force was unreasonable because

12   remember, the question is what would a reasonable officer on

13   the scene do, and you heard the testimony of search reasonable

14   officer, Sergeant Gibson.  He was right there.  He saw

15   everything the defendant saw, he didn't have the benefit of

16   20/20 hindsight, and he said it was shocking, because it was

17   so totally unnecessary.  So gratuitous.

18      And you know that's really what the defendant thought too

19   because not only didn't he write it down anywhere, after he

20   got charged with crimes, he starting going on SnapChat

21   inventing made up defenses and testing them out with his

22   friends.  It's flagrant and it tells you everything you need

23   to know about whether he thought what he'd done was legal.

24      While we're on the subject of making up stories after the

25   fact, I want to move onto Count 2, Mr. Welch.

1    Count 2 is for unreasonable use of force and Count 3 is

2    for conspiring with Deputy Hopper to write and submit that

3    false report about the arrest.  The elements for Count 2 are

4    the same we just discussed for Count 1, color of law,

5    unreasonable force, willfulness, and bodily injury.

6    I won't make you watch the video again now, but if you

7    want to watch it during your deliberations, both sides agree

8    when the punch happened and what was going on.  It's between

9    ten minutes and 27 seconds on the video, and ten minutes and

10   34 seconds, it's Government's Exhibit 4.

11   The punch is not on video.  But if you watch that moment,

12   you'll see the camera suddenly swing to the right and then

13   jerk suddenly to the left as he punches the defendant.  And

14   that's the moment on the video where everything went haywire.

15   Remember Judge Reeves told you a moment ago, the thing to

16   consider is the need for force at the moment the force

17   occurred.  And what was going on in that moment?  The

18   defendant told you, Mr. Welch was pinned against the car by

19   two very large officers.  He had one hand entirely behind his

20   back.  If you watch the video you can see one of his feet come

21   off the ground, so you know he's off balance.  He says, I can

22   turn around, I can turn around, I can do this.

23   The defendant admitted he had a grip on that right arm,

24   the one he was worried that the defendant -- that Mr. Welch

25   would use to elbow him.  Mr. Welch was a short, scrawny,

1    middle-aged guy who had already been searched and had his

2    knife taken off him.

3         And in that moment as Mr. Welch is pinned against the car

4    with one hand behind his back, what does the defendant do?  He

5    doesn't punch him in the arm or the back or the kidneys or the

6    shoulder, although he admitted to you he'd been trained to

7    target major muscle groups like those, and he had access to

8    all of those areas, he said he could have done it, but that's

9    not what he does.  He let's go of the arm he's supposedly

10   trying to control, the arm he's worried about getting hit

11   with, lets go of it, and punches Mr. Welch, not in any of

12   those control points, but right in the face.

13        He told you he knew strikes to the face are more likely

14   to cause injury.  And a totally predictable thing happened

15   when he did that.  It didn't make Mr. Welch comply, it made

16   him fight back.  At which point, Deputy Hopper and the

17   defendant took him to the ground.  The same thing the

18   defendant testified was impossible because of where Deputy

19   Hopper was standing.

20        On the ground, Deputy Hopper is able to get him in

21   handcuffs because he outweighs and out-muscles the defendant.

22   He doesn't need to hit him, although nobody disputes that

23   Mr. Welch was really actively resisting by then.

24        Once Mr. Welch was cuffed we also saw he was allowed to

25   stand back up and wander around the scene unescorted.  That's

what's going on here.  That would be a very strange thing to
do, if the defendant really just thought Mr. Welch had tried
to attack him.

Remember, a reasonable officer uses force that is
necessary and proportional to make an arrest and protect
himself.  The idea that the defendant couldn't have used his
superior size, his training, and his back-up officer to get
Mr. Welch's second hand from here to here makes no sense.

That sucker punch wasn't reasonable and he knew it.  You
know he knew it because he told Deputy Hopper to cover it up.
On video towards the end, if you listen closely you can
already hear that conspiracy starting to form.

He's giving Deputy Hopper instructions.  Hit him with
tampering, charge them both.  And he didn't deny that the
conversation that is the basis for Count 3 occurred.  He
admitted on the way to the jail he and Deputy Hopper discussed
what Deputy Hopper said the charges and the defendant's
version of what happened on scene.

Now, he claimed he didn't tell Deputy Hopper to write the
words, aggressive advancement, because he says his vocabulary
wasn't that sophisticated, but you heard his testimony, it
sounded pretty sophisticated when he was discussing that chart
and the principles of use of force he said he followed.

But Deputy Hopper was very clear.  The defendant told him
to say aggressive advancement.  He knew it wasn't true, and he

1   wrote it anyway to stop the defendant, his friend, from

2   getting in trouble.  That conversation, which the defendant

3   admits occurred, is the basis for Count 3.

4        Count 3 charges the defendant with conspiring with an

5   uncharged co-conspirator, that's Deputy Hopper, to falsify a

6   record for the purpose of hindering any investigation into a

7   matter within federal jurisdiction.

8        A conspiracy, it sounds complicated, there were a lot of

9   instructions on it, but it's just at base an agreement to do

10  something illegal.  In this case, it was an agreement to

11  falsify a police report to cover up the defendant's use of

12  excessive force.

13       I'm going to talk more in a moment about the separate

14  crime of falsifying records within federal jurisdiction

15  because that's a separate count against the defendant for

16  that, that's the report in the Brent Thomas incident, it's

17  Count 5, but this charge, Count 3, is about that agreement.

18       The defendant and Deputy Hopper formed to do something

19  illegal, to write a false report to make it sound like the

20  defendant had been justified in punching Mr. Welch.  That's an

21  agreement to commit the crime of falsification of records.

22       And they didn't just agree, they followed through on it.

23  The defendant came up with that false statement that Mr. Welch

24  had made an aggressive advancement, and he told Deputy Hopper

25  to write it in his report.  Deputy Hopper then did write it in

1    his report.  Those are the two overt acts charged in the

2    indictment.

3        Ladies and gentlemen, the video alone is enough to prove

4    that aggressive advancement never happened.  For one thing, as

5    the defendant admitted, Mr. Welch was pinned against a car.

6    There was no room for him to advance anywhere.  He couldn't

7    step towards the defendant, he couldn't get in his face.

8    Advancing would have meant running into the car.

9        His testimony that the aggressive advancement was

10   actually Mr. Welch just turning his head around quickly, that

11   defies common sense and what words mean.  Nobody would read

12   the words advancement and think of a person turning their head

13   over one shoulder.

14       There's another way you can be sure the defendant didn't

15   think he'd used reasonable force.  That's what he did with the

16   video.  Nothing.  That video was unquestionably evidence but

17   the defendant never made anyone aware it existed.  It was

18   sitting in the camera roll of his phone months and months

19   later when the sheriff's office gave the phone to the FBI.

20       So either the defendant told Deputy Hopper to say there

21   had been an aggressive advancement or Deputy Hopper made up a

22   story where he was party to a crime and then went to the FBI

23   and confessed his own made-up crime.  Your common sense can

24   tell you which one really happened.  There was no aggressive

25   advancement, but there was a conspiracy.

1    The defendant told Deputy Hopper to lie and Hopper

2  agreed, so that his friend wouldn't get in trouble for sucker

3  punching Mr. Welch and violating his rights.  That's what

4  happened and that's a conspiracy.

5    I want to talk next about the incident with Mr. Thomas at

6  the hotel.  There are three counts related to this incident,

7  4, 5, and 6, illegal search, falsifying records, unreasonable

8  use of force.  And really, again, there's not much in dispute

9  here.

10    There's two important things you have to decide.  One,

11  did Mr. Thomas actually give his consent for the defendant to

12  search his hotel room; and two, how hard did the defendant

13  shove Mr. Thomas into the wall?  Because he doesn't deny it

14  happened, he just says it wasn't that hard.

15    Remember what the evidence established.  The defendant

16  and Deputy Hopper go up to Mr. Thomas' hotel room.  The

17  defendant has at some point obtained a key by lying to

18  Mr. Patel claiming to have a search warrant.

19    Mr. Patel, a bystander with no dog in this fight at all,

20  tells you that's what happened.  Mr. Thomas meets Deputy

21  Hopper and the defendant at his front door.  He doesn't let

22  them in, he comes out into the hallway where they argue and

23  Deputy Hopper frisks him.  He feels a box cutter and he goes

24  into his pocket, takes it out and puts it on the floor.

25  That's not an illegal search.  That's a police officer doing a

frisk, feeling a weapon, and removing it.

But they don't arrest him there.  Instead, after
Ms. Tatum leaves, seeing them out in the hallway with the door
closed, he barges past Mr. Thomas into the hotel room using
the key that he got by lying to Mr. Patel.

Inside he starts tearing the place apart.  He admitted he
didn't just have a quick look around, he went through bags, he
went through drawers, he rummaged through the TV console.
Mr. Thomas said he never gave him permission to do that,
Ms. Tatum never heard Mr. Thomas give permission to do that,
and Deputy Hopper said, Mr. Thomas never gave consent to that
search.

This whole story about the supposed deal where the
defendant agrees to give Mr. Thomas another chance if he
consents to a search of his room, that didn't happen.

Brent Thomas and Deputy Hopper did not get together and
decide to falsely accuse the defendant of an illegal search on
the same day.

And there's something else you might have noticed, a
weird point where they really correlate each other.  Do you
remember Mr. Thomas describing the other officer who he didn't
know, what he did during the search?  He said, he just stood
there and looked like he didn't want to be there.

And remember Deputy Hopper describing how he felt
watching the defendant tear the room apart, knowing they

18

1   didn't have a warrant, knowing there was going to be trouble

2   about this?  He said I wanted to leave; I didn't want to be

3   there.

4       Well, Hopper didn't want to be there, because as Chief

5   Stratton told you, barging into someone's room, someone's

6   house, that hotel room, without a warrant, that's a really big

7   deal.  The right to be secure where you live, to refuse entry

8   to agents of the government, that's one of the deepest sacred

9   rights that this country was founded to protect.  A man's home

10  is his castle.

11      The Constitution has recognized that from the day it was

12  ratified, and it's true whether home is a million dollar

13  manager or a cheap hotel.  The government, whether it's the

14  FBI or the British Redcoats, or the Boyle County Sheriff's

15  Office is not allowed to push their way into where you live

16  and go through your stuff just because they want to.  There's

17  not a police officer in Kentucky and probably not one anywhere

18  in America who hasn't been taught that.

19      And if that wasn't bad enough, when Mr. Thomas told his

20  girlfriend to call his lawyer because his room was being

21  illegally searched, the defendant reared back and slammed him

22  into a wall.  That's the basis for Count 6.  It's another

23  unreasonable force charge, it's the same four elements as

24  Counts 1 and 2 we've already talked about, color of law,

25  again, that's stipulated, it's not in dispute.

1    An injury?  Well, Mr. Thomas got thrown into a wall; it

2    hurt.  Now, the defendant claims that never happened.  He says

3    Mr. Thomas slapped his hand against the wall and faked the

4    assault.  But do you remember in that video of Mr. Welch's

5    arrest, the defendant explains why he's filming.  He says,

6    Everyone is trying to get me in trouble.

7    He told you he filmed that arrest to protect himself.

8    But here, the next month, when he watches an arrestee do the

9    slapstick routine to falsely accuse him of assault in front of

10   a witness, that's what he sees and he doesn't write it down

11   anywhere?  That's not in his report.  He never told anybody

12   about that.

13   He wants you to believe that he watched someone try to

14   frame him for an assault at a time he knew everyone is trying

15   to get me in trouble, and he never wrote it down.  That's

16   absurd.  And his lie tells you what really happened.  He used

17   excessive force and he left it out because he told you, if he

18   didn't mention force in his report, his bosses, the sheriff

19   and Chief Stratton would never find out about it, and it

20   worked because it didn't.

21   Let's go back to Count 4.  That's the charge for the

22   illegal search.  It's very similar to the one we just talked

23   about for unreasonable force because it's the same crime, but

24   it's a different right involved.

25   So Count 4 has the same first three elements that are in

1    1, 2, 6, and 7.  The defendant was acting under color of law,

2    he violated a right, he acted willfully.  It does not have

3    that fourth element, bodily injury, so you don't have to worry

4    about that here.

5         Since the defendant has stipulated to color of law, you

6    only have to decide really one thing, and I'll explain why:

7    Whether there was consent.  The defendant admitted there was

8    no other basis for that search.  There was no emergency; he

9    didn't have a search warrant; his only basis is consent.  If

10   consent didn't happen, it was illegal.

11        And this whole supposed deal where the defendant and

12   Mr. Thomas agreed about being an informant and getting another

13   day if he consented to search, the defendant made that up.

14   There was no consent.

15        Deputy Hopper and Mr. Thomas didn't sit down together and

16   decide to falsely accuse him of an illegal search.  He

17   admitted, they are not friends, they don't hang out together,

18   they are not having barbecues on the weekend to coming up with

19   things to tell the FBI about the defendant.  He made it up and

20   that tells you that was an illegal search, and also that the

21   defendant knew it, because it tells you that his report was a

22   lie.  There's no reason to write a false report if you believe

23   you have followed the law.

24        Count 5 is about that false report.  It charges the

25   defendant with the crime of falsification of records in

1    federal jurisdiction.  Judge Reeves told you this crime has

2    three elements, I put them up on the screen here.

3        What they basically boil down to is this:  It's against

4    the law for a police officer to put false statements in a

5    report in order to cover up his violations of constitutional

6    rights.  You know from Special Agent Holliday's testimony,

7    this is the kind of thing the FBI investigates regularly.  And

8    that's what the defendant did when he illegally searched

9    Mr. Thomas' room and then wrote a false report claiming to

10   have gotten consent.

11       He couldn't report the truth, because the truth was he'd

12   obtained a key under false pretenses and used it to barge in

13   over Mr. Thomas' objections.  So he lied.  He lied so that if

14   anyone ever went through his paperwork, if the reports ever

15   came into Court, if anybody ever bothered to investigate, his

16   report would look like nothing had happened at all.  Just

17   another routine search based on consent.

18       That brings is to the fourth and final incident, the

19   beating of Destin and Clay, the two young men you met on

20   Wednesday.  Since we just finished talking about the false

21   report the defendant wrote in the Brent Thomas incident, I

22   want to start with a note about the report in this case.

23   Unlike that two sentence report that the defendant wrote about

24   searching Mr. Thomas' room, this report runs to a second page,

25   it's just loaded up with details.  Why the difference?

1   Because this time it wasn't someone on the margins of society

2   who he'd targeted.

3       It was two middle class kids out on a munchies run, late

4   at night.  One of them was a police Explorer.  He knew people

5   at the sheriff's office, someone might believe him if he

6   complained.  So we get a much longer statement in that text to

7   his colleague, and a much more detailed false allegation an

8   hour after it happened about why the defendant had to punch

9   Destin Newman so hard that his nose and his cheek bone broke.

10      And here you really see the two Tanner Abbotts at work,

11  because while one Tanner Abbott is writing that detailed false

12  statement about why he had to punch Destin Newman, the real

13  Tanner Abbott is texting his buddies to brag how much damage

14  he'd done.

15      That's the Tanner Abbott who you see with Mr. Newman.

16  That's the Tanner Abbott you see holding up his swollen

17  knuckles and laughing to Detective Lewis.

18      The key question for you-all here is simple.  What

19  happened?  It's the same four elements I've talked about for

20  Counts 1 and 2 and 6, but obviously you heard two very

21  different accounts of how this whole stop unfolded.

22      On the one hand you've got Destin and Clay's account in

23  which the defendant comes across two young men who he thinks

24  are gay, he perceives as physically weak, and he starts to

25  mock them, accusing them of being drunk without doing tests,

1    and mimics Destin's voice in a high-pitched feminine way.

2        And then when Destin challenges his authority by asking

3    for a supervisor, he breaks out his favorite move, in through

4    the open door, breaking Destin's face.

5        Clay's understandably hops out of the car, knows he's not

6    supposed to rush an officer, so holds his hands out and yells,

7    please, stop hurting my brother, and he gets an elbow to the

8    face too, just for good measure.  You saw him holding up his

9    broken glasses.

10        On the other hand, we get the defendant's version, or I

11    should say, versions, because it keeps changing.  In the

12    moments that other officers are showing up, he hasn't had time

13    to think about it, the defendant keeps it vague.  He bucked up

14    so I slammed him; he was flexing on me, I slammed him too.

15    Not many details, but that's the initial story on scene while

16    he's giggling and flashing his knuckles at anyone who will pay

17    attention.

18        Then, at the hospital, he learns he's done some serious

19    damage.  Destin has three facial fractures.  So he fires off

20    not one, not two, but three different texts bragging about how

21    much he'd hurt Destin.  Two of those texts were only

22    15 seconds apart.  He was literally copying and pasting the

23    same boast to different people.  But with that kind of injury,

24    he also knows he needs a better story than, he bucked up and I

25    slammed him.

1    So in his citation and in that draft he sent to his

2    friend, the defendant claims Destin got out of the car on his

3    own, refused to take sobriety tests and then started fighting

4    when he tried to put him in handcuffs.  But what the defendant

5    didn't know is that he'd been watched by Mr. Gastineau, the

6    Wendy's worker.  And Mr. Gastineau, as much as defense counsel

7    succeeded in confusing him by showing him blurry photos he'd

8    never seen before, did not see two different police beatings

9    that night.

10    He might be confused about what he saw, and where it was,

11    years before he testified, but you know what he saw.  He saw

12    Destin not stepping out of the car on his own and resisting

13    handcuffs, but getting yanked out and slammed against the car.

14    That's completely consistent with what Clay Ballard says

15    happened.

16    The defendant also needs an excuse for hitting Clay,

17    speaking of Clay, and breaking his glasses.  So what he comes

18    up with is that all 130 pounds of Clay Ballard decided to try

19    to interfere with his arrest and free his brother.  So the

20    defendant says he had to escort him to the ground.

21    Now, how a 225-pound starting offensive lineman manages

22    to escort a 130 pound teenager to the ground in a way such

23    that his face hits first, and breaks his glasses is something

24    I've never been able to figure out, and the defendant, in his

25    statements, sure didn't explain it.

25

1       And after this, the defendant says, the now handcuffed

2   Destin gets back up and resumes some kind of -- launches some

3   kind of assault by kicking him.  What did he say?  Neck to

4   knees, he says that leaves him with bruises all over his body.

5   Bruises, by the way, that he doesn't mention in that cover

6   sheet for his use of force report that he admitted he wrote

7   four months later and backdated to make it look like it was

8   written the day after.

9       Even though he told you the prosecutor in Boyle County

10  hadn't been prosecuting his assault on police officer charges

11  because he wasn't documenting injury.  He was kicked neck to

12  knees and bruised all over his body, and here he has a chance

13  for that slam dunk assault on a police officer charge but he

14  doesn't document the bruises?  It doesn't make sense.

15      He says he used empty hand strikes to gain compliance.

16  So he did know, actually, four months before that chase with

17  Justin Cooper that if you punch someone in handcuffs you have

18  to put the reason on paper.

19      Folks, this story would be hard to believe even if it

20  wasn't contradicted by a witness.  It simply didn't happen.

21  Not only is it outlandish, it's not even what he tells the

22  other officers on scene.  It hasn't gotten that detailed yet.

23      On the scene, he gives none of the details that end up in

24  the use of force report, that he never did at the time,

25  because he's too interested in bragging about punching people,

1 breaking Destin's face, flashing his knuckles, and he's the

2 one who's giggling, not Destin Newman.

3   No mention of this amazing high kicking handcuffed

4 attack, not to the other officers who answered his calls

5 supposedly for help.  So why all the lies?  Why the crazy

6 story?

7   Again, you know the answer.  He'd been picking on the

8 vulnerable again.  He'd done the same thing that he had to

9 Justin Cooper, William Welch, almost the same thing he did to

10 Mr. Thomas.  A scrawny kid had annoyed him and challenged his

11 authority and that was all the excuse he needed to punch him

12 in the face.

13   It wasn't reasonable and he knew it.  That's why he

14 checked with Detective Lewis to make sure it wasn't on camera.

15 That's why he was so vague about what happened on the scene.

16 That's why he made false statements, and that's why he lied to

17 you on Tuesday -- Thursday.  Because he willfully used

18 unreasonable force when he knew it wasn't reasonable against

19 two young men who probably didn't weigh as much as him put

20 together.

21   And yes, it's true, Destin and Clay both pleaded guilty

22 to disorderly conduct and resisting arrest.  And by doing

23 that, by taking that plea deal, they stayed out of jail and

24 they got to go on with their lives.

25   Clay got to graduate high school, keeping his dreams of

1    future employment intact.  Destin got to stay in college.

2    They knew it was their word against a police officer.  They

3    had drugs on them.  They had every reason to think they

4    wouldn't be believed.

5         Frankly, it would be surprising if any two young men with

6    bright futures and so much to lose would have done otherwise.

7    But despite that, you can know what really happened.  Because

8    the other Tanner Abbott, the one he tries to hide from

9    respectable folks, told you the same thing in his boastful

10   text messages to his buddies.  That Tanner Abbott does not

11   tell about having to defend himself from two assailants at

12   once.

13        That Tanner Abbott is gloating about how he broke a guy's

14   hand -- broke his hand and a guy's face with one punch.  Every

15   one of the people that the defendant brutalized, has some kind

16   of baggage.  Every one of them has some reason why, if you

17   heard their testimony alone you might question it.  That's

18   exactly what he was counting on.  That's why he picked them

19   out for the ass whoopings and the beatings that he liked to

20   deal out because of the way it made him feel.

21        He placed his bets that a jury like you wouldn't believe

22   people like them if they ever spoke out.  He placed his bets

23   that his own false stories would be enough to protect him.

24   Same bet he placed when he took the stand and lied to all of

25   you and told you to believe things that aren't supported by

1    the evidence and just don't make sense.

2         I want to be very clear.  The defense does not have to

3    prove anything in this case.  The defendant had the absolute

4    right not to testify, to remain silent and put the government

5    to our high burden of proof beyond a reasonable doubt.  But he

6    gave up that right.  And because he did, it's fair for you to

7    judge his credibility just like you judged the credibility of

8    any other witness.

9         And ladies and gentlemen -- and I'll include the

10   convicted felons in this, he was the least credible witness in

11   this trial.  He got caught lying, and lying, and lying.  He

12   lied to you about important things, like the day he said in

13   paperwork he'd searched Mr. Welch's room, he got caught lying

14   to you about things that didn't matter.  Like how often he

15   went to the gym.

16        He asked you to believe things that he and only he says

17   happened.  Even though witnesses who don't know each other,

18   who's motives point in different directions, police officers

19   and convicted felons told you those things didn't happen.

20   Things that he didn't even say happened in his paperwork at

21   the time where he'd been trained to tell the whole truth.

22        His self-serving testimony wasn't credible.  When you go

23   back to deliberate, you should disregard it entirely.  The

24   government, on the other hand, has not asked you to take

25   anyone's word for something that logic and evidence and plain

1       common sense don't support.  Because the truth is, of course,

2       there aren't really two Tanner Abbott's, there's just one.

3              One who makes sure to look professional, diligent, and

4       honest on paper, and in courtrooms, and in the evidence, that

5       he chooses to submit.  The same one who, when the cameras are

6       off, was a bully with a badge, who got his kicks by hurting

7       people who couldn't defend themselves, and couldn't fight

8       back.  People who's complaints he thought would be ignored.

9              That's not the real Tanner Abbott, that's the real Tanner

10      Abbott on your screens.  And he is sitting right there.  Now

11      that you've met him, that Tanner Abbott, now that you've seen

12      the texts you were never supposed to see, and heard from the

13      victims you were never supposed to take seriously, and the

14      brothers in blue he counted on to keep his secrets, you know

15      there's only one verdict in this case consistent with the

16      evidence.  Tanner Abbott is guilty of all charges.

17                                    - - -

18             MR. WARD:  I want to start by talking about that

19      chart, Defense Exhibit 4.  Mr. Guarnieri is absolutely right,

20      I didn't talk about it in my closing.  Frankly, after the

21      defendant's testimony I didn't think I needed to.  But I think

22      the defense is showing you that chart over and over and over

23      again to claim this one plus one theory.  It's not on the

24      chart.

25             Of course it's not on the chart.  Nowhere on that chart

does it say that you're allowed to go one level up.  It's got arrows pointing straight across, and of course it doesn't.

Have any of you looked at the top of that chart?  Did you notice what plus one for active aggression would have been if you go to the right and then up?  Deadly force.

The way the defendant testified he understood that chart would have entitled him to shoot Justin Cooper in the head if he spat on him.  Of course that's not on there.

That would mean if a scrawny kid like Clay Ballard kicked backwards once at him during handcuff he could put an gun to the back of his head and pull the trigger.  That's ridiculous.

And on the defendant's cross-examination when Mr. Dembo pressed him to make sure that's really what he meant, he doubled down, he said yes.  He had to make that outrageous claim because the evidence proved he did all the things he was accused of doing, so he had to come up with an explanation.

But the Tanner Abbott plan for use of force is entirely made up.  You heard the actual training every other Kentucky law enforcement witness got.  They all went to the same academy, they all got the same training, none of them thought that that one plus one meant what thought it meant.

And what about what he didn't say to Deputy Bradshaw when Deputy Bradshaw told you, no, it's never justified.  He didn't push back.  He didn't say, What about that one plus one rule we learned at the academy?  He just closed his SnapChat app

knowing that it would all be deleted.

And don't forget the incident a year earlier where one of his coworkers got fired for punching a handcuffed man in the face.  You don't need a confusing chart with a bunch of arrows to understand what he understood.  You punch a handcuffed man in the face, without a very good reason for doing so, there is no bright line rule, I admit that, someone with handcuffs grabs your gun, bets are off.  But that's not what happened.

He knew.  You punch someone in the face without a very good reason, you get in trouble.

It's not the government who's Monday morning quarterbacking here.  It's not the government asking you to consider things that were never said or documented or done at the time.  It's the defense.  They are the ones throwing a chart around after the fact making claims that Tanner Abbott never made when he did this stuff.  The government's case is not about charts or theories floated to potential witnesses after the fact to see if they'll fly.

We don't want to strip him of his discretion.  We wish he'd used it.  The same discretion appropriately described by the other law enforcement officers like Deputy Gibson who was able to evaluate that scene in a split second and know he didn't need to punch Mr. Cooper.  The chase had been chaotic, yes.  But it was over.  The cuffs were on.

Now, Mr. Guarnieri, and I'm surprised he said this, but

1    he said police officers need to be bullies.  Police officers

2    are supposed to represent the best of our community and

3    society.  They are given a lot of power.  They are given that

4    discretion.  And in most cases they are given all of our

5    admiration and respect.  The same admiration that Destin and

6    Clay felt before they met Tanner Abbott.

7        Bullies don't act to defend themselves.  They don't act

8    for the right reasons.  They act to needlessly hurt people and

9    humiliate those with less power than them.

10       The defense kept reminding you that Tanner Abbott felt

11   ten feet tall and bullet proof.  I don't usually get up here

12   on rebuttal and agree with defense counsel, but I agree.  He

13   did feel ten feet tall and bulletproof.  It's precisely

14   because he felt that way he though he could whoop up on little

15   guys and get away with it.

16       Those messages speak for themselves.  It doesn't matter

17   what the recipients thought.  You can read them.  He thought

18   it was funny.  He told you that himself.  He did this because

19   it made him feel better.  He said those things because it made

20   him feel good.

21       And, Beat his ass for me, that wasn't another officer's

22   words, those were his words.  Check it.  It's Government

23   Exhibit 19.  Find this guy and beat him for me.  That use of

24   force that he's describing can't be reasonable, it hasn't

25   happened yet.  There hasn't been any resistance.  He's

contemplating, he's premeditating beating a man in advance. That speaks for itself.

Speaking of ten feet tall and bulletproof, I don't know if you noticed, as all those victims came into the courtroom and walked past you, there was kind of a pattern as far as their physical size and stature. No high school wrestlers, now championship starting offense linemen. Like a schoolyard bully, Tanner Abbott didn't pick on anyone his own size.

Justin Cooper maybe is a little bigger than William Welch and Clay Ballard, but he waited to hit him, didn't he? Until his hands were cuffed behind his back, not exactly a fair fight. The defendant did feel ten feet tall and bulletproof, but he picked victims who were anything but.

Something else that's a little baffling to me is how much the defense wants to talk about the William Welch video. The video that he kept on his phone and never turned in because it proved beyond any reasonable doubt that the story he got Deputy Hopper to tell about that incident was false.

The video proved William Welch didn't aggressively advance on him. Does the video also show that Deputy Hopper had a few details out of order when he testified in the grand jury having never seen the video? Sure.

Hopper hadn't seen the video, he was going from memory about an incident he had seen years before, and that he hadn't tried to tell the truth about at the time, he tried to lie.

1    Like most people, Hopper remembered the stuff that was most

2    important to him, which means in this case, he remembered

3    there was no aggressive advancement.  He remembered the

4    defendant hit Welch Welch in the face when he had no

5    justification for doing so, and that he was the one who came

6    up with the false story to cover it up.

7        For everything else, you can rely on that video and

8    things the defendant admitted on cross-examination.  The

9    defense wants to make it out, you know, wants to blame people

10   for having faulty memories of events that happened years ago,

11   that they don't have an accurate record of, and where the most

12   significant thing that happened to them that day, was a sharp

13   blow to the head.

14       It's no surprise.  You've heard a little bit of

15   contradicting testimony about things that ultimately really

16   don't matter that much.

17       Like Mr. Thomas, the defense wants to say he wasn't

18   injured, but he told you, he got flung into a wall.  It hurt.

19       Same with William Welch.  No matter if he tries to act

20   tough on the stand, common sense tells you, it hurt to get

21   punched in the face.  But even if you believe William Welch's

22   tough guy act, he told you anyway, he got a split lip, that's

23   enough for bodily injury, it's in the jury instructions.

24       Defense counsel didn't address the others presumably

25   because it's less clear, Cooper's mugshot with bruising,

Newman's photos and injuries, and Ballard's injuries and the photograph.

Speaking of Mr. Ballard, let's talk about that well lit intersection, and that radio call, things the defendant supposedly showed the defendant didn't do, what the evidence established he did.  The whole claim that he wouldn't have put out the radio call, or wouldn't have done this beating you know, in a well lit intersection is based on the premise that he wouldn't want witnesses.

The logic of that argument depends entirely on the defendant wanting to hide the fact that he abused people from other law enforcement officers.  But as you now know, that's simply not the case.  He loved an audience, as long as it was an audience he was confident would either never tell on him or if they did, would never be believed.

He assaulted Brent Thomas in front of Thomas' girlfriend and Deputy Hopper, he assaulted William Welch in both of Welch's brothers and Deputy Hopper.  He assaulted Justin Cooper right in front of Sergeant Gibson's face.

He figured his brothers in blue would have his back and the civilians would never be believed.  He was so pleased with himself for whooping up on people and so sure nobody would report him, that he'd whip out his phone and text his buddies telling them what he'd done.

It's elementary school all over again.  Don't brag.

1     Don't boast.  The defendant wasn't put off by a well lit

2     intersection.  That was his stage.  Those were his spotlights.

3     That was the perfect place for him to beat down a couple of

4     powerless teenagers who disrespected him.

5          Why did Destin Newman act strange and confused and

6     stagger around on scene?  Not because he was high, his nose

7     was broken, he was probably concussed.

8          Destin and Mr. Thomas, the defense counsel wants to

9     suggest that some of these victims aren't credible because

10    they thought about filing lawsuits or they vented their

11    feelings online.  As if there is something wrong with being

12    upset and wanting justice when you get assaulted by a police

13    officer who's supposed to protect you.  As if the only way to

14    have any credibility at all is if you completely turn the

15    other cheek.

16         Well, Mr. Welch did turn the other cheek and we know what

17    the defendant did to it.  It turns out that a lot about this

18    case is about things we all learn in elementary school.  Don't

19    be a bully.  Don't brag.  Don't look at a convicted criminal

20    and a law enforcement officer and just judge a book by its

21    cover, you need to look at the evidence.

22         In law enforcement you heard the equivalent of elementary

23    school is the police academy.  It's where you learn all those

24    basic simple fundamental things that you'll use every day for

25    the rest of your career.  Don't punch people in handcuffs;

1   don't write false reports; don't barge into people's homes

2   without a warrant.  And most importantly, respect

3   Constitutional rights.

4        Tanner Abbott didn't do that.  He was the kid who did

5   whatever he wanted; punch who he wanted; go where he wanted;

6   make stuff up.  As for people's Constitutional rights, you

7   don't need me to tell you how he felt about that.  He told you

8   himself.

9        Thank you for your time and attention, ladies and

10  gentlemen.

11                              - - -