UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 5:23-cr-109-DCR-EBA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| TANNER M. ABBOTT, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM
IN SUPPORT OF UNRESOLVED OBJECTIONS**

Comes now the Defendant, Tanner M. Abbott, by and through undersigned counsel, and pursuant to Paragraph 7 of the Sentencing Order (DE #76), hereby submits this Memorandum of Law in support of his unresolved objections to the PSR.

**I.      Obstruction of Justice.**

Abbott objects to the obstruction of Justice adjustments as they are improper in this case. To start, Abbott exercised his right to go to trial with a sincere belief that based on his training, experience as a police officer, and knowledge of what other officers in his department did on a regular basis, that his actions in each count were not only subjectively, but also objectively reasonable under the circumstances. Abbott's understanding of his training was consistent with other officers that testified. For example, Braydon Hopper testified, consistent with Abbott, that with regards to the force continuum chart an officer may use force one level up from the suspect's conduct.

USSG §3C1.1 allows for an adjustment for Obstruction or Impeding the Administration of Justice providing:

1

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by **2** levels.

*Id.*

To support each obstruction of justice adjustment the PSR repeatedly implies that Abbott perjured or provided false testimony at trial. "Supreme Court strictures protect a defendant's right to testify by tightly circumscribing the circumstances under which a district court may enhance a sentence for willfully presenting false testimony at trial." *United States v. Roberts,* 919 F.3d 980, 990 (6th Cir. 2019). "[A] sentencing enhancement for perjury under §3C1.1 must be limited to those cases in which the defendant intentionally lied on the stand." *United States v. Sassanelli,* 118 F.3d 495, 500 (6th Cir. 1997).

The Supreme Court has stated that perjury occurs when "[a] witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94 (1993). The Court has also noted that "an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *Id.* at 95. An obstruction "enhancement is far from automatic." *Id.* at 98. And a "district court may not rely solely on the jury's verdict in applying an obstruction enhancement for perjury." *United States v. Chance,* 306 F.3d 356, 390-91 (6th Cir. 2002) (citing *United States v. Sassanelli,* 118 F.3d 495, 500 (6th Cir. 1997)).

### a. Obstruction Related to J.C.

Abbott objects to the obstruction as to J.C. The PSR suggests that Abbott's failure to put his use of force and J.C.'s spitting into the citation warrants an obstruction adjustment. However,

2

at trial, the testimony supported that a citation is used to summarize the relevant facts to the charges listed in the citation. *See e.g.,* Braydon Hopper Testimony, at p. 29 ("The narrative just explains the elements of the crime that was committed."). J.C.'s spitting and Abbott's use of force were not relevant to the charges that J.C. had received so they were not included in the report. As such, this does not warrant an obstruction adjustment. More so, there is no requirement that every incident be reported, and the absence of a fact in a report that others observed does not rise to the level of obstruction.

Abbott objects to the extent that the PSR attempts to state that Abbott's statements regarding the J.C. interaction constitute perjury or are untruthful. J.C.'s testimony was consistent with Abbott's testimony with respect to the arrest except for the sole issue of whether or not J.C. spit on Abbott. Just because the jury convicted Abbott on Count One, does not mean that the jury believed Abbott lied about J.C. spitting. Rather, the best explanation for a finding of guilt on Count One was the testimony of several witnesses who stated that punching a person in handcuffs is never justified, even in the instance of spitting. As such, the statements in Paragraph 16 of the PSR do not justify an obstruction adjustment.

Abbott objects to the description of his pre-trial contacts extent they do not fully set forth the circumstances surrounding said contacts. Abbott contacted David Lewis only stating, "Hey this is Tanner, just wanted to let you know a PI of mine might reach out to you about me. Nothing to be alarmed about or anything, he's speaking to everyone that worked with me. He's already talked to Ray Ray, TJ, Kody, and others." Abbott's communication was not intended to, and did not have the impact of, influencing or pressuring Lewis to testify in a specific manner.

In short, the contacts are taken out of context. While Abbott did have in-person contact with individuals at BCSO, said contacts were disclosed to his probation officer in writing. Abbott

3

specifically notified his probation officer of potential in person contact with BCSO officers after his sister-in-law was in a car accident in which BCSO was the investigating agency. Therefore, Abbott's in-person contacts were not concealed or improper.

Additionally, Abbott's contacts and communications regarding use of force and potential evidence were not done with an intent to persuade witnesses in this case. Abbott had communications with TJ Wren, Rayniqico Bradshaw, and Paul Megilligan; none of these individuals were interviewed by the United States regarding the underlying charges, and none of them were present for any of the incidents charged in this case. In fact, the United States only contacted these individuals after learning of Abbott's contacts with them, and they only became relevant trial witnesses as a result of that contact. As such, Abbott had no reason to believe any of them would be a government witness in this matter, and in no way intended to obstruct the prosecution of this case in making said contacts.

Therefore, Abbott objects to the obstruction of justice and summary of facts stated in Paragraphs 15 through 17, 23, 24, and 36 of the PSR.

    b. **Obstruction Related to W.W.**

Abbott objects to the obstruction as it relates to W.W. Said adjustments are improper because the alleged false testimony is insufficient to constitute perjury warranting an adjustment, and because USSG §3C1.1 Application Note 7 bars the adjustment.

First, Paragraphs 18 through 20 detail Abbott's encounter with W.W. and alleges that he gave untruthful testimony regarding W.W.'s action, the level of resistance, and the report. Notably, Abbott gave truthful testimony that was consistent with the W.W. Arrest Video, and admitted to punching W.W. The amount of resistance that Abbott felt from W.W. is subjective in nature, and just because Hopper testified that he did not think that W.W. made an "aggressive advancement"

does not mean that Abbott lied or falsely testified about W.W.'s movements. There was repeated testimony that the terms are flexible, can vary based on the circumstances, and the level of resistance is often determined in split second decisions. Like a self-defense case, just because a jury rejected Abbott's reasoning for the reasonableness of the use force does not mean that Abbott perjured himself.

Second, as to Count Three, USSG §3C1.1 Application Note 7 titled, "Inapplicability of Adjustment in Certain Circumstances" specifically states, "[i]f the defendant is convicted of an offense covered by… §2J1.2 (Obstruction of Justice)… the adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution or sentencing…" Given that in Paragraph 44, the base offense level for Count Three is based on USSG §2J1.2, and as previously set forth, Abbott did not perjure himself, the two-level obstruction of justice adjustment should not be applied.

As such, Abbott's testimony regarding his subjective split-second decision making during the W.W. arrest, including his opinion on the level of resistance W.W. exerted is not sufficient to constitute perjury, and the USSG prohibits an obstruction adjustment for offenses covered by USSG §2J1.2. Therefore, the obstruction adjustments related to W.W. are improper.

    c. **Obstruction Related to B.T.**

Abbott objects to the obstruction as it relates to B.T. To support an obstruction adjustment, the PSR alleges that Abbott falsely testified because his testimony contradicted Hopper's testimony with respect to consent to search B.T.'s hotel room and based on the report stating the search was based on consent. Hopper's conflicting testimony is insufficient to prove that Abbott's testimony was intentionally false. Hopper's testimony was repeatedly inconsistent and contradicted by other witnesses, namely B.T., Ms. Tatum, and Mr. Patel. Further, Hopper's status

5

as an unindicted co-conspirator does not add to his credibility. Additionally, the circumstances surrounding the search suggest that Abbott had consent. Hopper testified that B.T. and the female sat on the bed while Abbott searched the hotel room. If they had not given consent, why did they just sit on the bed and watch? As such, there is not sufficient evidence to support that Abbott perjured himself to warrant an obstruction of justice adjustment.

As to the obstruction of justice adjustment relating to Count Five, USSG §3C1.1 Application Note 7 specifically precludes the two-point adjustment because the underlying offense is covered by USSG §2J1.2 (Obstruction of Justice). There is not sufficient evidence to support that Abbott engaged in "a significant further obstruction [] during the investigation, prosecution or sentencing." The report stating that the search was based on consent is a part of the offense covered by USSG §2J1.2, the report was not later modified or changed in anyway, but instead remained the same. As such, the report cannot be the basis for an obstruction adjustment.

Therefore, Abbott's testimony regarding his subjective belief that he had consent to enter the hotel room is not perjury simply because it contradicts Hopper's testimony, and the USSG prohibits an obstruction adjustment for offenses covered by USSG §2J1.2. Thus, the obstruction adjustments for Count Four and Five are improper.

    d.  **Obstruction Related to D.N. and C.B.**

Abbott objects to the obstruction as to D.N. and C.B. To support said adjustments, the PSR sets forth some testimony that Abbott gave at trial and alleges that said testimony was false. Said testimony related to his interactions with D.N. and C.B., and the amount of force he used. The PSR relies on Abbott's testimony about where he punched D.N. to support the obstruction adjustment. However, said testimony was not contradicted, and instead consistent with D.N.'s testimony, Abbott admitted to punching D.N. in the head. And, both D.N. and C.B., pleaded guilty to resisting

arrest and disorderly conduct, which support's Abbott's testimony that D.N. and C.B. were not complying in effecting the arrest. Additionally, Abbott's testimony regarding the encounter with D.N. and C.B. is supported by the dispatch calls and body camera footage that was admitted into evidence and/or by avowal at trial. Said recordings show D.N. and C.B. being non-compliant, show that Abbott was out of breath while trying to control the scene, and Lewis' Body Camera footage supports that D.N. was being resistant and non-compliant during the stop, even after several officers and first responders were on the scene.

As such, there is insufficient evidence to support that Abbott perjured himself at trial or otherwise engaged in sufficient activity to warrant a two-level adjustment for obstruction of justice with regards to Count 7.

## II. Aggravated Assault Should not be used as the Base Offense Level for the 18 U.S.C. § 242 Convictions.

The base level offense for each of the 18 U.S.C. § 242 convictions should not be based on the sentencing guidelines for Aggravated Assault. Pursuant to USSG §2A2.2 (Aggravated Assault), Application Note 1, an "Aggravated assault" is defined as follows:

> [A] felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony.

For each of the convictions, it is undisputed that Abbott did not use a dangerous weapon, did not attempt to strangle or suffocate, and did not intend to commit another felony. As such, to support the cross-reference to aggravated assault, there must be a felonious assault that caused serious bodily injury.

Count Four, which is the conviction for the unlawful search of a hotel room, cannot be cross-referenced to the aggravated assault guideline, as it does not meet any of the elements set forth in USSG §2A2.2 (Aggravated Assault), specifically there was no assault, it does not

7

constitute a felony, and there was no bodily injury. For the reasons set forth herein, the conduct related to J.C. W.W., C.B., and D.N. did not result in a serious bodily injury, and therefore cannot cross reference to USSG §2A2.2.

### a. Convictions Related to J.C., W.W., and C.B.

The United States agrees that the cross reference to aggravated assault for Count One (J.C.), Count Two (W.W.), and Count Seven (C.B.) is improper. To start, none of these instances constitute a "felonious assault" as required by USSG §2A2.2, and none of these individuals suffered a serious bodily injury. Courts have applied both state and federal law when determining whether an assault is a "felonious assault". *See e.g., United States v. Thompson,* 597 Fed. App'x 318, 320 (6th Cir. App. 2015) (noting its doubts that state law controls, but stating, "[n]either the Guidelines nor the notes define 'felonious assault'" and applying Tennessee law.); *United States v. Smith,* 910 F.2d 326, 331 (6th Cir. 1990) (noting that federal law controls when federal and state law conflict).

Federal law defines both misdemeanor and felony assaults, as applicable here, it notes, "(4) Assault by striking, beating, or wounding" is a misdemeanor assault, and that "(6) Assault resulting in serious bodily injury" is a felony. 18 U.S.C. § 113(a)(4)(6). A "serious bodily injury" requires "(A) a substantial risk of death; (B) extreme physical pain; or (C) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *See* 18 U.S.C. § 113(b)(2) (citing and incorporating 18 U.S.C. § 1365(h)(3)). On the other hand, a "bodily injury" is "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." 18 U.S.C. § 1365(h)(4).

Kentucky law defines assault in the fourth degree, a misdemeanor, in part and as applicable here, as "intentionally or wantonly caus[ing] physical injury to another person." KRS 508.030. A

8

"[p]hysical injury means a substantial physical pain or any impairment of physical condition." KRS 500.080(16).

Whether applying federal or state law, Abbott's actions with regard to J.C. W.W. and C.B. do not constitute a felonious assault. As noted in the PSR, J.C., W.W., and C.B. sustained only a "bodily injury", and none of them sustained a "serious bodily injury." Each of their injuries were minor and fall within the "bodily injury" definition under federal law, as their injuries were as follows: J.C. testified that he had bruising and physical pain; W.W. testified that he felt no pain but had a small cut on his lip; and C.B. testified he had physical pain and bruising. All of said injuries fall within the categories set forth in 18 U.S.C. § 1365(h)(4) for "bodily injury", and KRS 500.080(16) as a "physical injury". There is no evidence to support that there was a "serious bodily injury" as defined by federal law, and as such, there was no felonious assault with regards to J.C., W.W., and C.B.

Additionally, as the United States agrees, it would be improper to state that the Defendant had the "intent to commit another felony." That is because the deprivation of civil rights only occurred because of an assault. The deprivation of civil rights is inherently entangled with the assault, and had the Defendant not use force against the individuals, then there would not have been any assault, thus, no deprivation of civil rights. As such, there was no intent to commit another felony to support application of USSG §2A2.2.

Therefore, the base offense level for J.C., W.W., and C.B. should be based on the levels set forth in USSG §2H1.1, and not USSG §2A2.2.

b. **Conviction Related to D.N.**

Count Seven's base offense level, with respect to D.N., should not be based on USSG §2A2.2 (Aggravated Assault). Abbott was convicted of Count Seven for a violation of 18 U.S.C.

9

§ 242, in using excessive force while arresting D.N. and/or C.B. Here, Abbott did not use a dangerous weapon, did not strangle or suffocate D.N., and did not intend to commit another felony; the factor being applied to support application of USSG §2A2.2 is the "serious bodily injury" element.[1] Said section incorporates Sentencing Guidelines §1B1.1, Application Note 1(M) which defines serious bodily injury:

> (M) "Serious bodily injury" means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law.

Sixth Circuit cases make clear that significant injuries are required to establish a "serious bodily injury" and supports that D.N. did not suffer a "serious bodily injury". In *United States v. Flores,* 974 F.3d 763 (6th Cir. 2020), the court held that extreme pain from stab wounds, and the need for several sutures justified finding a serious bodily injury. In *United States v. Clay,* 90 F. App'x 931 (6th Cir. 2004), the court held that repeatedly hitting a person in the head with a pistol resulting in a loss of consciousness and the need for sutures was sufficient for serious bodily injury. And in *United States v. Mollett,* Case No. 22-5253, 2023 WL 2401189 (6th Cir. Mar. 8, 2023), the court held that several broken ribs that resulted in the victim being admitted to the ICU and being treated with intravenous narcotics for pain constituted a serious bodily injury.

D.N. did not suffer a serious bodily injury within the meaning of the sentencing guidelines and his injuries were not like those which the Sixth Circuit has deemed constitute a serious bodily injury. Notably, and distinct from Sixth Circuit cases, here, there was no need for any surgery (or

---

[1] Note, like the other individuals, the United States agrees that it would be improper to state that the Defendant had the "intent to commit another felony." That is because the deprivation of civil rights only occurred because of an assault. The deprivation of civil rights is inherently entangled with the assault, and had the Defendant not used force against D.N., there would not have been any assault, thus, no deprivation of civil rights.

10

sutures), no prescription for pain medications, no admittance to the hospital, no indication that there was "extreme pain" given the lack of pain medications, no casts, and the medical records indicated that D.N. did not suffer any head injuries. Additionally, D.N. initially indicated that he did not want to go to the hospital which further supports that he was not suffering extreme pain. And, D.N. was not admitted to the hospital; instead, he was seen in the emergency room, and left the hospital after only a few hours to be taken to jail. Being seen in the emergency room is not the same as being admitted into the hospital and being treated.[2] All of these facts make clear that D.N. did not suffer a serious bodily injury.

D.N.'s injury is consistent with the definition of "bodily injury" which is defined as "an injury that is painful and obvious, or is of a type which medical attention ordinarily would be sought." USSG §1B1.1, Application Note 1(B). D.N. sought medical attention, however, it did not result in admission and an overnight stay at the hospital, surgery, sutures, serious pain medications, or any physical therapy. Consistent with a "bodily injury" D.N. sustained an injury that you may ordinarily seek medical attention for, and which was presumably painful and obvious. As such D.N. suffered a "bodily injury" and not a "serious bodily injury."

Additionally, with regards to Count Seven, the jury made a single, unspecified determination with respect to whether Abbott violated D.N. or C.B.'s rights. While the jury was instructed that it had to unanimously determine that the same individual had their rights violated, the jury did not make a specific finding in its verdict form as to whether they agreed that the interaction with D.N. or C.B., or both, satisfied all of the elements. As such, there is no support that shows the jury determined D.N.'s rights were violated and that he suffered bodily injury. This

---

[2] *See* Healthcare.gov, https://www.healthcare.gov/glossary/hospitalization/, (defining "hospitalization" as, "Care in a hospital that requires admitted as an inpatient and usually requires an overnight stay. An overnight stay for observation could be outpatient care.").

11

again supports that the aggravated assault adjustment should not be used to calculate the base offense level.

### III. Victim Related Adjustments

Abbott objects to the adjustments for a physically restrained victim as it relates to W.W. and B.T., as there is insufficient evidence to support that they were physically restrained during the offense to justify the two-point adjustment pursuant to USSG §3A1.3. "Physically restrained means the forcible restraint of the victim such as by being tied, bound, or locked up." USSG §1B1.1 Application Notes (1)(L).

For B.T., Braydon Hopper specifically testified that B.T. was placed in handcuffs after the search of the hotel room took place. As such, "during the course of the offense" B.T. was not physically restrained. Instead, B.T. was freely sitting on the bed during the search, and was only placed against the wall once being arrested. Contrary to the characterization in the Addendum to the PSR, Abbott placing B.T. against the wall was not a felonious assault, and in fact, the jury found Abbott not guilty of said allegations.

As for W.W., while Abbott and Hopper were trying to restrain W.W. when force was used, W.W. was not physically restrained which is evidenced by the fact that W.W. took both Abbott and Hopper to the ground. W.W. was not restrained, and an adjustment for a "restrained victim" is not justified. Therefore, the two-point adjustment is improper for each Count.

### IV. Grouping with regards to Count Seven.

Count Seven should not be split into two different groups. The United States exercised its discretion, and got the benefit of overlapping proof, by charging Abbott in Count Seven with a violation of either D.N. or C.B.'s constitutional rights, and it should not now get the benefit of splitting Count Seven into two groups for sentencing purposes. If the United States wished to

punish Abbott separately for the alleged actions against D.N. and C.B. it could have, and should have, separated Count Seven into two Counts. The United States failed to do so, and cannot now seek to split Count Seven to increase Abbott's sentence.

USSG §2H1.1 does not support that Count Seven should be split into two counts. Application Note 1 provides, "[i]n certain cases, conduct set forth in the count of conviction may constitute more than one underlying offense (e.g., two instances of assault, or one instance of assault and one instance of arson). In such cases, ***use the following comparative procedure to determine the applicable base offense level***: ..." USSG §2H1.1 Application Note 1 (emphasis added). This Application Note is highlighting that when a single count contains more than one offense, the offense with the highest base level should be used for the group, not that the underlying offenses should be completely split into separate groups. The Third Circuit has directly addressed Application Note 1 and stated that this is the proper reading. *United States v. Figueroa,* 729 F.3d 267 (3d Cir. 2013) ("Where the conduct established by the conviction constitutes more than one underlying offense, the court should look to the underlying offense that carriers the highest offense level. USSG §2H1.1 Application Note 1."). Therefore, here, if it is determined that D.N. and C.B. constitute two underlying offenses, they may be separated to determine which has the highest adjusted offense level, but should only be counted as one group when it comes to grouping.

To the extent that USSG §2H1.1, and its Application Notes are ambiguous in how to treat underlying offenses, the rule of lenity should apply, and the sentencing guideline should be interpreted in favor of leniency for Abbott. The "policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended." *United States v. Boucha,* 236 F.3d 768, 774 (6th Cir. 2001) (stating that the rule of lenity applies to the sentencing

13

guidelines) (quoting *Bifulco v. United States,* 447 U.S. 381, 387 (1980)). Here, particularly given the United States' decision to charge Abbott with D.N. and C.B. in a single count, any ambiguity for how the guidelines apply in Count Seven should be construed in favor of leniency.

The jury was instructed that it must be unanimous in determining whether all of the elements were met with regard to either D.N. or C.B. However, the jury did not make a specific finding of whether they unanimously agreed that Defendant was guilty with respect to D.N. or C.B., or both D.N. and C.B. There is no proof that the jury found Defendant guilty as to both D.N. and C.B. In fact, there is evidence to support that the jury did not find all elements of 18 U.S.C. § 242 fulfilled as to C.B. or D.N.

As to C.B., the United States introduced evidence as Government Exhibit 22A purporting to show C.B.'s broken glasses, said photo also showed C.B.'s eye which he claims was bruised and swollen after being injured by Defendant. The photo, which was taken within days of the encounter, does not show any injury to C.B.'s eye. As such, the evidence put forward by the United States contradicts the suggestion that C.B. suffered a bodily injury. Additionally, C.B. pleaded guilty to resisting arrest and disorderly conduct. It is possible the jury relied on these facts and the fact that force was used against C.B. only one time, to conclude that Abbott did not use excessive force against C.B.

As to D.N., there is sufficient evidence that the jury could have relied on that would support all of the elements of 18 U.S.C. § 242 were not met with regard to D.N. Specifically, trial testimony and the body camera footage introduced as Government Exhibit 10, showed that D.N. took his vehicle several feet off the road into an embankment; told Abbott to call his supervisor; refused DUI testing; failed to follow directions with several law enforcement officers and emergency personal on the scene; acted disorderly to such a degree that his shoe came off during the encounter;

14

and pleaded guilty to resisting arrest and disorderly conduct. All of these could support and reasonably allow the jury to conclude that Abbott's use of force against D.N. was reasonable under the circumstances.

Thus, without the jury making an explicit finding of guilt as to both D.N. and C.B. and given the evidence that could support the jury's decision to find the Defendant not guilty with respect to either D.N. or C.B., Count Seven should not be split into two groups for sentencing purposes as the sentencing guidelines do not provide for such a split, and the record does not support that Abbott was convicted on two separate counts.

## V.    Acceptance of Responsibility.

Abbott objects to Paragraph 27, and states that he should be entitled to an adjustment for acceptance of responsibility as set for in USSG §3E1.1 as throughout the investigation and at trial, Abbott admitted to using the force alleged, and he only challenged whether the use of force was justified and reasonable. The Application Notes to USSG §3E1.1 specifically contemplate that a defendant can receive an acceptance of responsibility adjustment even when exercising their right to stand trial, "[c]onviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction." USSG §3E1.1 Application Note 2.

As detailed previously herein, Abbott objects to the adjustments for obstruction of justice, however, even if an adjustment for obstruction of justice is given in this case, an adjustment for acceptance of responsibility should still be granted. While "[c]onduct resulting in an enhancement under Section 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both Sections 3C1.1 and 3E1.1 may apply."

*United States v. Gregory,* 315 F.3d 637 (6th Cir. 2003) (quoting USSG §3E1.1). Therefore, Abbott respectfully requests that he be granted a downward adjustment for acceptance of responsibility.

## VI.  Abuse of Trust Adjustments

The United States, in its Objections to the initial PSR requested that a two-point increase under USSG §3B1.3 be given for abuse of position of trust for Counts Three and Five. USSG §3B1.3 provides in relevant part:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by **2** levels. *This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.*

(emphasis added). At this time, the base offense level for both Counts Three and Five cross reference and rely on the base offense level and adjusted offense level for Counts Two and Four, respectively. As the United States notes, Counts Two and Four require an "abuse of a trust of skill", and cannot be subject to the adjustment. Because Counts Three and Five also rely on the underlying base offense levels used in Counts Two and Four, the two-point adjustment is improper.

## VII.  Objections to Offense Conduct

The PSR generally mischaracterizes events that occurred in this action. To the extent that said statements and factual assertions affect any of the adjustments or calculations, Abbott objects to the statements.

Abbott objects to the characterization in Paragraphs 7 and 8 addressing Count One, and the interaction with J.C. Specifically in Paragraph 8, it summarizes the events based on what Officer Brett Simpson allegedly observed at the scene and testified about before the grand jury that indicted Abbott. However, Officer Simpson did not testify at trial and his grand jury testimony was not consistent with the trial testimony of Abbott, J.C., or Officer Josh Gibson, who were the only three in proximity to the use of force by Abbott on J.C. Simpson's characterization of J.C. being

"calm, not argumentative or aggressive", even if true when Officer Simpson interacted with J.C., does not describe J.C.'s behavior during the interaction with Abbott and Officer Gibson.

Abbott objects to the characterization in Paragraphs 9 and 10 addressing Counts Two and Three and the interaction with W.W. The testimony and evidence at trial do not support that (1) Abbott lied in testifying that W.W. made an aggressive move, and (2) Abbott told Braydon Hopper to write any specific words in the report. First, Hopper testified that "Mr. Welch jerked back" and that he saw W.W. "pull away", even if Hopper did not necessarily interpret W.W.'s jerking back as aggressive, it does not mean that Abbott falsely testified in stating that W.W.'s jerking was aggressive in his opinion. These are split second decisions that police officers must make, and they are inherently subjective in nature. Second, Hopper testified that he wrote the citation in the manner he did, "[b]ecause I don't know, I guess I wanted to make Tanner look good", and "[b]ecause [Hopper] and Tanner were close." This evidence contradicts the conclusions in Paragraphs 9 and 10 that Abbott gave false testimony regarding W.W.'s aggressive movement, and that Abbott specifically told Hopper to write the report in a certain manner.

Additionally, as for the specific allegations in Paragraph 10, Hopper's trial testimony clearly contradicts the statements set forth therein. First, Hopper testified that Abbott "was frisking Mr. Welch and he felt an abnormal object in his groin area, and at that point, I remember -- from what I remember, Mr. Welch jerked back…" This directly contradicts Paragraph 10's characterization of "an aggressive groin search". Moreover, Paragraph 10 states that Abbott laughed while Hopper and W.W. rolled around on the ground; however, Hopper's trial testimony and the W.W. arrest video clearly support that Abbott did not laugh while Hopper and W.W. rolled around on the ground. Instead, it shows that Abbott and Hopper both assisted in getting W.W. into handcuffs. Finally, there was no testimony or evidence to support that Abbott "stood behind

17

Hopper while Hopper was typing the report" or to support that, "Hopper put the event of Abbott punching W.W. out of order in his report." In fact, the only issue with the narrative in the report, according to Hopper's testimony, is that Hopper did not feel that W.W. made an "aggressive advancement." There was no testimony stating that the report was out of order, or that Abbott watched Hopper write the report.

Abbott objects to the characterization in Paragraphs 11 and 12 addressing Counts Four and Five and the interaction with B.T. Paragraph 12 incorrectly states that Abbott threw B.T. into the wall while handcuffed. The trial testimony supported the claim that B.T. was placed against the wall so that he could be handcuffed. Additionally, there was no testimony that supports the allegation that Abbott told Hopper "the less you put in a report the less you need to worry about."

Abbott objects to the characterization in Paragraphs 13 and 14 addressing Count Seven and the interaction with D.N. and C.B. Abbott's testimony regarding the interaction with D.N. and C.B. was supported by evidence in the record such as David Lewis' Body Camera footage, which showed D.N. attempting to walk around, and acting in a manner which resulted in other officers scorning D.N.'s belligerence. Additionally, the Dispatch Audio that Abbott introduced by Avowal supports that at least D.N., if not both D.N. and C.B. were being disorderly, that D.N. began to fight, and that there was a physical altercation that resulted in Abbott becoming out of breath. Also, D.N. and C.B. both testified that they pleaded guilty to resisting arrest and disorderly conduct. D.N. and C.B.'s testimony at trial, and several 302 Interviews prior to trial have provided multiple different versions of how the interaction with Abbott went. As such, their testimony regarding how the events took place is not reliable.

**VIII.  Objection to the Sentencing Guideline Range.**

The sentencing guidelines range as set forth in the PSR does not fit the crime, and unfairly punishes Abbott for what he did in comparison to sentences given in similar cases, and compared to those who have not been punished for the things they have done. In Defendant's Memorandum in Support of his Motion for Relief Pursuant to 18 U.S.C. § 3553(a)(2), sentences from cases involving violations of the same or similar statutes in the Sixth Circuit are set forth. Said cases involve far more serious injuries, including deaths, and result in sentences less than what the PSR suggests in this case.

Additionally, there were several bad acts by other officers brought up in evidence introduced by the United States, and the evidence supports that Abbott acted in a manner he thought was appropriate based on what his supervisors and co-workers did, and allowed. To start, the unindicted co-conspirator, Braydon Hopper, testified under oath before the Grand Jury that on one occasion Hopper was with a suspect who "was in handcuffs" and did not pose any danger, and stated that he "out of frustration of the whole situation, … just kicked him in the butt." Hopper Grand Jury Testimony at p. 17-18. He then admitted, "was it a lawful kick? No." *Id.* Thus, Braydon Hopper, who is the unindicted co-conspirator, openly admitted to kicking a handcuff suspect out of anger; he has not been punished in any manner, and remains a police officer today.

Next, on Government Exhibit 10, David Lewis's body worn camera for the D.N. and C.B. arrest, you can hear several other officers admitting to punching other suspects not part of this case, bragging, joking, and laughing about using force, including the United States' own witnesses, David Lewis and Braydon Hopper. Moreover, during trial, BCSO Chief Chris Stratton testified that a BCSO officer hit a handcuffed suspect in the head with a flashlight without justification and has not been criminally prosecuted.

19

For all the reasons set forth in Abbott's Motion for § 3553(a)(2) relief, the sentencing guideline range as calculated provides a greater sentence than necessary to meet the goals of sentencing.

Wherefore, Abbott respectfully requests that each objection be resolved in his favor, and that the total offense level be calculated as a 21.

Respectfully submitted,

*/s/ David J. Guarnieri*
David J. Guarnieri
Daniel Luke Morgan
Emily M. Shepard
201 East Main Street, Suite 900
Lexington, Kentucky 40507
(859) 231-8780
dguarnieri@mcbrayerfirm.com
lmorgam@mcbrayerfirm.com
eshepard@mcbrayerfirm.com
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon all parties to this matter on the 28th day of May 2024 through the Clerk of Court using the CM/ECF system and by email to the counsel of record as follows:

Zach Dembo
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507
(859) 685-4908
Zachary.dembo@usdoj.gov

Alec C. Ward
150 M Street NE
Washington, D.C. 20002
(202) 532-3991
Alec.ward@usdoj.gov

*/s/ David J. Guarnieri*
Attorneys for Defendant
