UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:23-CR-00109-DCR-EBA-1

(Related Civil Action No. 5:26-CV-00048-DCR-EBA)

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

TANNER M. ABBOTT,                                                            DEFENDANT.

*** *** *** ***

Tanner M. Abbott, a federal prisoner, brings this action under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his conviction and sentence. [R. 132]. The Court recognizes that Abbott is proceeding *pro se* and construes his motion more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003). The United States filed a response in opposition, [R. 135], to which Abbott filed a Reply. [R. 137]. Therefore, this matter is ripe for review. For the following reasons, the undersigned will recommend denying Abbott's motion. [R. 132].

### FACTS AND PROCEDURAL HISTORY

Abbott was employed by the Boyle County Sheriff's Office in Danville, Kentucky as a deputy until he was terminated in September 2021. *United States v. Abbott*, No. 24-5602, 2025 WL 2237656, at *1 (6th Cir. Aug. 6, 2025). In 2023, a federal grand jury indicted Abbott "on seven counts related to his use of excessive force and other illegal conduct while acting as a sheriff's deputy during four separate incidents between January and April 2021." *Id*. Count one charged Abbott with using excessive force while arresting J.C., when he punched J.C. in the head without

legal justification. *Id*. Counts 2 and 3 related to the arrest of W.W. *Id*. Count 2 charged Abbott with punching W.W. in the head without legal justification and Count 3 charged him with directing a co-conspirator to fraudulently fill out an arrest report. *Id*. Finally, Counts 4, 5, and 6 related to Abbott's interaction with B.T. *Id*. Abbott was charged with illegally searching a hotel room occupied by B.T., using excessive force against B.T., and fraudulently stating in the arrest report that B.T. gave him consent to search his hotel room. *Id*.

The case proceeded to trial in February 2024, and the jury convicted Abbott of six of the seven counts in the indictment. *Id*. at *3. Judge Danny C. Reeves sentenced Abbott to a total term of 110 months of imprisonment. [R. 97]. Abbott appealed his conviction, but it was ultimately upheld by the Sixth Circuit. *See Abbott*, WL 2237656, at *9. Abbott now moves the Court to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255, alleging ineffective assistance by both his trial and appellate counsel. [R. 132].

## LEGAL STANDARD

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternatively, if he alleges a non-

constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Id.* at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

### ANALYSIS

Abbott asserts two grounds for relief in his § 2255 motion, both of which contain allegations of ineffective assistance of counsel. [R. 132]. To successfully obtain relief on his ineffective assistance of counsel claims, Abbott has the burden of proving two elements for each claim: (1) deficient performance by counsel, and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, regarding deficient performance, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id*. To show that the representation fell below the objective standard of reasonableness, Abbott must articulate specific acts or omissions that demonstrate how counsel's performance "fell outside the wide range of professionally competent assistance." *Id*. at 690. In other words, Abbott bears the burden of showing that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. While reviewing Abbott's ineffective assistance of counsel claims, the court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Second, Abbott must establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id*. at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 11-12 (2011) (citing *Strickland*, 466 U.S. at 696)). "An error

by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 1.  Trial Counsel

First, Abbott argues that his trial counsel was ineffective for failing to retain and present a qualified use of force expert at trial. [R. 132 at pg. 5]. Abbott explains that during his trial, the central issue was whether his actions during several law enforcement encounters constituted unreasonable and excessive force. [*Id.*]. "The Government's theory depended heavily on technical interpretations of police practices, threat perception, reaction time, escalation decisions, and objective reasonableness." [*Id.*]. Thus, Abbott argues his trial counsels' decision not to consult with, retain, or request funds for an expert witness regarding the use of force was ineffective assistance of counsel. [*Id.*].

In further support of his argument, Abbott included a declaration of Marcos Olaniel, a retired Special Agent with the United States Drug Enforcement Administration (DEA). [R. 132-1 at pg. 2]. Olaniel states that he has reviewed the materials related to Abbott's case and that it is his opinion "that the force used by Mr. Abbott during [W.W.'s] incident was objectively reasonable and consistent with accepted law-enforcement training and use of-force standards." [*Id.*]. Olaniel went on to state the incidents involving B.T., D.N., and J.C. "would ordinarily be reviewed through internal administrative or disciplinary processes within the sheriff's department, rather than being pursued as federal criminal civil-rights prosecutions." [*Id.*].

Despite this declaration, Abbott has failed to establish deficient performance. The Supreme

Court has "often explained that strategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (per curiam) (internal citation omitted); *see also Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) (noting that "[a] strategic decision cannot be the basis for a claim of ineffective assistance of counsel unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness" (citation omitted)). "[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *Samatar v. Clarridge*, 225 Fed.Appx. 366, 372 (6th Cir. 2007) (quoting *State v. Hartman,* 754 N.E.2d 1150, 1177 (Ohio 2001)); *see also Harrington v. Richter*, 562 U.S. 86, 111 (2011) (noting that *Strickland* "does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense"). In fact, "in many criminal cases trial counsel's decision not to seek expert testimony 'is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant.'" *Samatar*, 225 Fed.Appx. at 372 (quoting *State v. Glover,* No. CA2001-12-102, 2002 WL 31647905 at *5 (Ohio Ct. App. Nov. 25, 2001)).

Here, on the issue of whether the force used was excessive and unreasonable, Abbott's counsel chose to challenge the government's proof through cross-examination and through the testimony of Abbott, a former law enforcement officer himself. [R. 135 at pgs. 3-4]. The government called the victims and various witnesses to testify about the facts underlying the complaint. For example, the government called Braydon Hopper, a police officer with the Lancaster Police Department who used to work with Abbott for Boyle County. [R. 118 at pg. 115]. Hopper was a witness to the underlying facts that constituted Counts 2 and 3 of the complaint. [*Id.*]. Hopper testified that Abbott's use of force, punching W.W. in the face after he failed to immediately obey his

commands, was not a proper use of force. [*Id*. at pg. 134]. Hopper was also asked about the citation he wrote after the encounter with W.W. [*Id*. at pg. 140]. Hopper explained that the some of the charges against W.W., including terroristic threatening, did not match what he saw on scene, but that he included them to make Abbott look good so he would not get in trouble. [*Id*.]. Hopper also admitted that the narrative portion of the citation, which outlined the facts from the encounter with W.W., was not entirely accurate. [*Id*. at pg. 143]. Specifically, Hopper admitted that W.W. never made an aggressive advancement towards Abbott. [*Id*. at pg. 143].

Hopper was also a witness to the facts underlying Counts 4, 5, and 6, all related to Abbott's interaction with B.T. [*Id*. at pg. 158]. Specifically, Hopper testified that after B.T. slightly pulled away, Abbott slung him by his arm, spun him around, and slammed his head into a wall. [*Id*.]. Hopper testified that he did not agree with the amount of force Abbott used and that it was not consistent with the Boyle County's policies and training. [*Id*. at pgs. 158-59].

Abbott's trial counsel challenged Hopper's testimony during cross examination by showing Hopper the video of the incident involving W.W. [*Id*. at pg. 193]. Abbott's counsel thoroughly discussed the facts and discussed what was written in the citation. [*Id*.]. When showing the video, counsel questioned Hopper on whether the cellphone in W.W.'s hand could have been used as a weapon, whether there was a knife found on W.W., and whether Hopper was able to see the entirety of the encounter from where he was located during the incident. [*Id*. at pg. 195]. Hopper responded that a cell phone could have been used as a weapon, that he did not recall whether a knife was found, and that he was a witness to most, but not all, of the encounter. [*Id*.]. Abbott's counsel also questioned Hopper on why he gave an inconsistent statement to the grand jury from his testimony now. [*Id*. at pg. 206]. Finally, Hopper admitted that if the facts in the citation were true, that the force used by Abbott would have been reasonable. [*Id*. at pg. 211].

Abbott's counsel then questioned Hopper about his testimony regarding B.T. Counsel questioned Hopper about his statements given when he met with the Department of Justice, which were inconsistent from his testimony at trial. [*Id*. at pgs. 219]. Counsel inquired about Hopper's statements that Abbott "spun" or "threw" B.T. into a wall, and whether there was any evidence of that, such as a dent or marking on the wall. [*Id*.]. Hopper responded that he did not see a mark on the wall and that no pictures were taken. [*Id*.].

The United States also called Chief Deputy Chris Stratton to testify. [R. 120 at pg. 238]. Stratton testified regarding the "use-of-force continuum," explaining it to be a tier system for the amount of force an officer is allowed to use on a suspect in different circumstances. [*Id*. at pgs. 242-43]. During cross examination, Abbott's attorney presented Stratton with the "PPCT resistance/control continuum," which Stratton agreed was consistent with his general understanding of the use-of-force continuum. [*Id*. at pg. 265]. On the left side of the PPCT, it discussed the level of resistance by a suspect, and the right side discussed the level of control, the appropriate response from the officer. [*Id*. at pg. 266]. Abbott's attorney then questioned Stratton about what response is acceptable when a suspect is actively resisting, in which Stranton responded that an officer could use an intermediate weapon, which is something more than a "hard empty hand." [*Id*. at pg. 268].

Finally, Abbott's counsel called Abbott himself to testify as to the events that occurred. [*See generally* R. 121]. Regarding the amount of force an officer is allowed to use, Abbott testified that when someone is engaged in defensive resistance, such as W.W. when he was pulling away and not allowing him to handcuff him, he is allowed to respond with "a hard empty hand." [*Id*. at pg. 101]. Abbott further explained that in that situation, he is even "allowed to go up one step higher and use an intermediate weapon, so taser, baton, pepper spray if I feel that's necessary." [*Id*.].

Abbott then went through the facts, some of which were disputed by prior testimony, and explained why the force he used in every circumstance was not excessive or unreasonable. [*See generally id*.].

Even if the decision by Abbott's attorneys to challenge the government's proof in this way rather than calling an expert was debatable, "debatable trial tactics do not constitute ineffective assistance of counsel." *Samatar*, 225 Fed.Appx. at 372 (internal citations omitted). Thus, the undersigned will not second guess Abbott's trial counsels' tactics as the performance meets an objective standard of reasonableness and was not constitutionally deficient. *Id*.

Furthermore, even assuming, *arguendo*, that deficient performance exists, Abbott has still failed to establish prejudice. Abbott argues that Olaniel's affidavit directly supports the defense's theory of the case and undermines the Government's narrative. [R. 132 at pg. 9]. Thus, according to Abbott, if Olaniel was called it "would have changed the evidentiary picture." [*Id*.]. Despite this assertion, Abott has not shown a reasonable probability that the outcome of his trial would have been different had an expert testified for the defense. [1] *United States v. Slater*, 2011 WL 7168921, *11 (E.D. Ky. Dec. 5, 2011) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)).

First, as the government points out, the jury was instructed that it did "not have to accept" the expert's opinions. [R. 135 at pg. 6 (quoting [R. 75 at pgs. 8-9])]. Abbott himself defended his actions regarding one of the victims, W.W., and the jury rejected his view when convicting him. [*Id*. (citing [R. 121])]. Additionally, the Government presented substantial evidence at trial. This

---

[1] The United States makes an additional argument that Olaniel's declaration does not comply with Fed. R. Crim. P. 16(b)(1)(C)(iii) and that Olaniel does not qualify as an expert. [R. 135 at pg. 4]. Because Abbott's claim fails for other reasons, the undersigned will not address these arguments.

evidence included, in part, images of victims J.C. and D.N. showing their injuries sustained by Abbott's use of force; text messages between Abbott and other officers regarding his interactions with the victims, including: "Broke his face with one punch" and "time to violate rights;" video footage of Abbott's interactions with victims W.W., C.B., and D.N.; Abbott's falsified citations for two of the victims; victim testimony; and testimony of officers who were present and witnessed Abbott's interactions with the victims. [R. 79]. Considering the overwhelming evidence presented at trial, there is no "reasonable probability that," but for trial counsel's alleged error in failing to retain an expert, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Therefore, Abbott's argument that his trial counsel was ineffective fails.

### 2. Appellate Counsel

Next, Abbott argues that his appellate counsel was ineffective for failing to advise him on his right to seek certiorari at the Supreme Court. [R. 132 at pg. 11]. Abbott explains that after the Sixth Circuit affirmed his conviction, his appellate counsel failed to provide him with the Sixth Circuit's opinion and failed to advise him on his ability to file a writ of certiorari. [*Id*. at pgs. 11-12]. The United States argues that Abbotts argument fails because there is no constitutional guarantee to the assistance of counsel when seeking certiorari at the Supreme Court. [R. 135 at pg. 7].

While the Constitution guarantees "that at trial and on direct 'first tier' appeal every criminal defendant will have access to a lawyer to assist with his or her defense … the Constitution does not entitle a defendant to the effective assistance of counsel for a discretionary appeal (e.g., a petition for certiorari)." *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (first citing *Halbert v. Michigan*, 545 U.S. 605, 610 (2005); and then citing *Ross v. Moffitt*, 417 U.S. 600, 617 (1974)). The Sixth Circuit has further explained that "defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari," and therefore "even the failure to

file a petition for certiorari cannot amount to constitutionally ineffective assistance of counsel."
*Harper v. United States*, 792 Fed.Appx. 385, 391 (6th Cir. 2019) (quoting *Nichols*, 563 F.3d at 242 (en banc) (citing *Ross*, 417 U.S. at 617).

Here, as a criminal defendant, Abbott was guaranteed the right to counsel when appealing his conviction to the Sixth Circuit. However, after the Sixth Circuit affirmed his conviction, he was no longer guaranteed the right to counsel in seeking a petition for certiorari. *Id.* And "where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson,* 501 U.S. 722, 752 (1991) (citation omitted). Therefore, Abbott's argument fails. *See Wainwright v. Torna,* 455 U.S. 586, 587-88 (1982) (holding that because the defendant had no constitutional right to the assistance of counsel in pursuit of state supreme court certiorari, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the [certiorari] application timely").

In his Reply, Abbott attempts to reframe his argument by contending that his appellate counsel was ineffective for failing to communicate, notify, and consult with him about his appellate rights explaining, "[t]he Government argues there is no constitutional right to counsel for certiorari and therefore no ineffective assistance. This argument misstates Petitioner's claim." [R. 137 at pg. 4]. Instead, Abbott argues that under *Roe v. Flores-Otega*, his appellate counsel had a duty to consult with him about his rights to seek Supreme Court review, and their failure to do so constitutes ineffective assistance of counsel. [*Id.* (citing *Roe v. Flores-Otega*, 528 U.S. 470 (2000))].

It is well established that the Supreme Court has placed a burden on counsel to consult with their clients regarding appellate rights on direct 'first tier' appeal in certain circumstances. *Roe*, 528 U.S. at 480. However, the Sixth Circuit has not ruled on the issue of whether this burden extends to discretionary appeals. "While the Sixth Circuit has never ruled on this issue, other

Circuits have, all concluding that the Sixth Amendment does not guarantee the right to be consulted about discretionary appeals once the 'first tier' appeal has been denied." *United States v. Davis*, No. 1:20-cr-29-04, 2023 WL 8614222, at *5 (W.D. Mich. Dec. 13, 2023) (first citing *Pena v. United States*, 534 F.3d 92 (2d Cir. 2008) (in considering the same scenario, the Second Circuit concluded that there was no duty for lawyers to inform criminal defendants of their right to petition the Supreme Court for certiorari); and then citing *Folkes v. Nelsen*, 34 F.4th 258 (4th Cir. 2022) (in considering the same scenario, the Fourth Circuit also concluded that there was no duty for lawyers to inform criminal defendants of their right to petition the Supreme Court for certiorari).

Furthermore, while the Sixth Circuit has found that the Constitution requires counsel to continue representation after the decision in a direct appeal in limited cases, *see e.g., Smith v. Ohio Dep't of Rehab & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006) (recognized a constitutional duty for counsel to "notify a defendant of the outcome of his direct appeal"); *see also Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014) (the Sixth Circuit concluded that appellate counsel was deficient for failing to inform his client of an upcoming deadline for filing for state post-conviction relief could serve as the basis for an IAC claim), both decisions concern state court proceedings and state court processes. "No court in this Circuit has relied on *Smith* or *Gunner* to impose a duty on appellate counsel to inform their clients of their right to petition the Supreme Court for a writ of certiorari." *Davis*, 2023 WL 8614222, at *5. Therefore, appellate counsel was not ineffective by failing to notify, inform, or consult Abbott that he could appeal to the United States Supreme Court. *See United States v. Byrd*, No. 5: 25-290-DCR, 2025 WL 3041868, at *8 (E.D. Ky. Oct. 29, 2025) (finding that Defendant's claim of ineffective assistance of counsel fails because "the Sixth Amendment does not guarantee the right to be consulted about discretionary appeals once the 'first tier' appeal has been denied.") (internal quotations omitted).

### 3. Evidentiary Hearing

Abbott argues he is entitled to an evidentiary hearing. [R. 132 at pg. 13]. An evidentiary hearing is required '[u]nless the motion and the files are records of the case conclusively show that the prisoner is not entitled to relief." 28 U.S.C. § 2255(b). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the application to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Thus, "[i]t follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. Upon review of the record and for the reasons outlined above, the Court recommends that an evidentiary hearing is not required because the record conclusively shows that Abbott is not entitled to relief as a matter of law. *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Abbott has not made a "substantial showing" as to any claimed denial of his constitutional rights. Moreover, the Court is unconvinced that reasonable jurists would find its

determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

## RECOMMENDATION

Upon review of the record, and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, **IT IS RECOMMENDED** that:

1. Abbott's § 2255 motion to Vacate under 28 U.S.C. 2255, [R. 132], be **DENIED**; and

2. A Certificate of Appealability be **DENIED** as to all issues raised, should Abbott so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition.  Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived.  *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed May 6, 2026.



Signed By:

*Edward B. Atkins*

United States Magistrate Judge